2012 WY 127

**Donna Ray TEEPLES, Appellant (Plaintiff),**

v.

**Neal J. TEEPLES, Appellee (Defendant).**

No. S–12–0007.

Supreme Court of Wyoming.

Sept. 27, 2012.

Representing Appellant: Richard Mathey of Mathey Law Office, Green River, Wyoming.

Representing Appellee: Weston W. Reeves and Anna M. Reeves Olson of Park Street Law Office, Casper, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]  Donna Ray Teeples, the appellant, was to receive a cash payment from her ex-husband, Neal J. Teeples, the appellee, as a result of the division of their marital assets pursuant to a divorce. The appellant claims that the payment, made with the funds of an S corporation owned jointly prior to the divorce, impermissibly increased her tax liability and was made with funds that were rightfully owed to her as a prior shareholder in the company.  We affirm the district court's decision to the contrary.

## ISSUE

[¶ 2]  Did the payment received by the appellant satisfy the terms of the Property Settlement Agreement pursuant to the parties' divorce?

## FACTS

[¶ 3]  The appellant married the appellee in 1979.  The appellant filed for divorce on November 26, 2007.  After mediation, the parties signed a Property Settlement Agreement on October 2, 2008.  Prior to the division of assets, the parties owned five companies jointly.  Pursuant to the agreement, the appellant received Great Basin Industries and the appellee received Industrial Services, Inc.  (ISI), Power Source Services, Inc., Sweetwater Holding, and RTR, Inc. Because the value of the property received by the appellee exceeded that received by the appellant, the agreement required the appellee to make a cash payment of $1,100,000 to the appellant on October 3, 2008, and three additional annual payments of $800,000 on the anniversary of the first payment, for a total of $3,500,000.  The agreement also provided that "[e]ach party shall be responsible for and each party shall pay the tax due on their separate income tax returns for 2008 and all subsequent years."

[¶ 4]   In September 2008, the appellant requested a partial advance on her first payment.   This request was made before the Property Settlement Agreement had been signed, but after the terms of the division of assets had been agreed upon in a signed document later attached to the agreement. The appellee agreed to this request, but because he was out of town, he directed the appellant, who still had the power to sign ISI checks, to sign a check issued to herself in the amount of $300,000 on September 24, 2008.   The appellee wrote a check to the appellant from ISI for the remaining $800,000 of the first payment on October 3, 2008.

[¶ 5]   In early 2009, the appellant received a Schedule K–1[1] related to her previous status as a shareholder in ISI, an S corporation.   That form indicated $1,659,058 ordinary business income due to the appellant's 37.7049% ownership share of ISI for 2008. The Schedule K–1 also included, as "Items affecting shareholder basis," $1,183,221[2] of property distributions.   The appellant also received a Schedule K–1 as a Great Basin Enterprises shareholder.   This form showed ordinary business income of $131,232, representing a 62.2951% ownership share.   Finally, the appellant was issued a Schedule K–1 for Sweetwater Holdings, Inc., indicating $203,944 income and a 37.7049% ownership share.[3]   The appellant, however, did not include the income as listed on her Schedule K–1s on her initial income tax return because her accountant was unsure if the appellant had received the $1,183,221 distribution from ISI as indicated on her Schedule K–1.   Instead, the appellant included $210,662 (less deductions) related solely to her Great Basin ownership, reflecting a 100% ownership interest in that company.   The appellant attached the following statement to her income tax return:   "Taxpayer is reporting items from schedules K–1 differently than reported on the K–1s." Instead, the statement indicates that the return will reflect a 100% ownership interest in Great Basin, a 0% ownership interest in ISI, and a 0% ownership interest in Sweetwater Holdings, Inc., despite the information contained in the Schedule K–1s.   It was only after the appellant informed her accountant that she had in fact received cash and property distributions amounting to $1,183,221 from ISI during 2008, that she amended the initial return to include the portion of income attributed to her ownership prior to the division of assets on October 3, 2008, as provided in the Schedule K–1s.   This resulted in an additional $615,939 tax liability to the appellant.

[¶ 6]   In 2008, ISI switched from the cash method of accounting to the accrual method. The appellee's accountant testified that he told the parties that this change was necessary to stay in line with IRS accounting requirements.   This change resulted in an increase of income to the company, and, thereby, to its shareholders for tax year 2008.

[¶ 7]   The appellant filed in the divorce action a Second Amended Petition for Order to Show Cause alleging as follows:

> Respondent has failed to make the initial cash payment of $1,100,000 due October 3, 2008.   Respondent instead issued checks totaling $1,100,000 to Petitioner but which in fact were Petitioner's share of the income of Industrial Services, Inc., and Sweetwater Holdings, Inc., and upon which Petitioner must pay U.S. income taxes of more than $600,000.

The appellant's Memorandum in Support of Second Amended Petition for Order to Show Cause contends that "Mrs. Teeples should have received the $1.1M cash payment from Mr. Teeples outright, free and clear of any tax liability."

---

1.   The function of a Schedule K–1 is to reflect a shareholder's share of the corporation's income. *Shareholder's Instructions for Schedule K–1 (Form 1120S)*, http//www.irs.gov/pub/rs-pdf/1120 ssk.pdf (last visited September 24, 2012).

2.   The $83,221, in addition to the $1,100,000 payment that is at issue, represents equipment received from ISI as part of the Property Settle-

ment Agreement.   This additional amount is not at issue.

3.   The record does not include evidence of a Schedule K–1 issued to the appellant with regard to either RTR, Inc. or Power Source Services, Inc.

[¶ 8]   The district court issued a decision letter, stating that:

> Respondent's payment of $1.1 million out of the ISI account was not an income distribution from the corporation, nor did that payment cause Petitioner to incur an additional tax liability.   Instead, that tax liability was a result of the allocation of income required for Subchapter S corporations and each party's ownership interest....
>
> There is no basis upon which to find Respondent in contempt or to otherwise modify or set aside the agreement....

The appellant now appeals that decision.

## STANDARD OF REVIEW

[¶ 9]   Although both parties suggest, correctly, that decisions in domestic relations contempt cases are afforded an abuse of discretion standard, we find that the pertinent issue in this case is whether as a matter of law the payment received by the appellant satisfied the terms of the Property Settlement Agreement.   Questions of law are reviewed *de novo*.   *KM Upstream, LLC v. Elkhorn Constr., Inc.*, 2012 WY 79, ¶ 44, 278 P.3d 711, 727 (Wyo.2012).

## DISCUSSION

[¶ 10]   On appeal, the appellant attempts to differentiate between a "distribution of shareholder income" and a "property settlement payment."   The significance of this distinction, according to the appellant, is that the former is subject to taxation, whereas the latter is received tax free.   Because the $1,100,000 was drawn from her ISI capital account, the appellant argues that the payment was "nothing more than a partial payment of the income attributable to her for the year 2008" and therefore cannot be a property settlement payment.

[¶ 11]   The appellant's argument represents a misperception of the taxation of S corporations.   Shareholders in S corpora-

tions are taxed based on their pro rata share of the corporation's income.   26 U.S.C.A. § 1366(a)(1) (West 2011).   If a corporation makes a distribution of property to a shareholder with respect to that shareholder's stock, the portion of the distribution which is a dividend must be included in the shareholder's income as well.   26 U.S.C.A. § 301(c)(1) (West 2011).   The appellant suggests that the $1,100,000 she received was a taxable dividend which led to over $600,000 in income tax liability.   The payment received, however, did not constitute a dividend and did not result in additional tax liability to the appellant.

[¶ 12]   When the appellant requested and received the advance on the money owed to her, the Property Settlement Agreement itself had not yet been signed by the parties.   However, the terms of that agreement, including the division of ownership of the five S corporations and the payment of $3,500,000, had been included in a signed document as of September 17, 2008, which document was to be incorporated into the Property Settlement Agreement.   At that point, both parties began treating the assets to be divided, namely ISI and the other S corporations, as their own.   On September 23, 2008, the appellant signed a contract as the president of Great Basin Enterprises to buy real estate to conduct the operations of that company.

[¶ 13]   Although the parties began treating the companies as their own from the date that the terms of the division of assets were agreed upon, for tax and accounting purposes the assets were not considered divided until the parties signed the Property Settlement Agreement.   The default rule to determine a shareholder's ownership percentage requires that the S corporation's income for the taxable year be divided evenly among all days in that year and then apportioned to the shareholders based on their ownership on a given day.[4]   26 U.S.C.A. § 1377(a)(1) (West 2011).   Here, the appellant was a 50% shareholder in all of the S corporations jointly owned with her ex-husband until the division of assets, at

---

4.   When one shareholder's interest is terminated, shareholders may elect to split a taxable year in two, with the first one ending on the date of the termination, so that the shareholder whose interest is terminated will only be subject to tax on income earned during the time that he or she actually held stock in the company.   26 U.S.C.A. § 1377(a)(2) (West 2011).   No such election was made in this case.

which point she owned 100% of the stock of Great Basin Enterprises and 0% of the other four S corporations, including ISI. As reflected in her Schedule K–1s, this resulted in 62.2951% ownership in Great Basin Enterprises and 37.7049% ownership in ISI and Sweetwater Holdings for tax year 2008. These numbers reflect the percent of the 2008 income of each S corporation that passed through to the appellant for income tax purposes. The IRS instructions are clear: "You are liable for tax on your share of the corporation's income, whether or not distributed." *Shareholder's Instructions for Schedule K–1 (Form 1120S), supra* note 1. Furthermore, the Property Settlement Agreement signed by both parties indicates that they will each pay their own portion of their 2008 income tax.

[¶ 14] The appellant does not suggest that the K–1s are incorrect. What the appellant does suggest is that the two payments of $300,000 and $800,000 constituted a dividend and increased impermissibly her income tax liability. This contention is not borne out by the appellant's Schedule K–1. The amount of money or other property distributed to a shareholder in an S corporation will first reduce the shareholder's basis in his stock. 26 U.S.C.A. § 1368(b)(1), (c)(1) (West 2011). If any portion of the distribution remains after reducing the basis to zero, that portion shall be treated as a dividend to the shareholder to the extent that it does not exceed the S corporation's accumulated earnings and profits. 26 U.S.C.A. § 1368(c)(2) (West 2011). Any remaining portion of the distribution will constitute ordinary income to the shareholder. 26 U.S.C.A. § 1368(b)(2), (c)(3) (West 2011). The appellant acknowledges that she received $1,183,221 in cash and property distributions from ISI during 2008. Her Schedule K–1 shows that this entire amount of the payment reduced her basis in ISI. This means that the distribution did not exceed her basis and, therefore, did not constitute a taxable dividend.[5] "Schedule K–1 does not show actual dividend distributions the corporation made to you. The corporation must report such amounts totaling $10 or more for the

calendar year on Form 1099–DIV, Dividends and Distributions." *Shareholder's Instructions for Schedule K–1 (Form 1120S), supra* note 1. There is no evidence in the record to suggest that the appellant received such a form. The appellant's income tax liability due to ISI reflected her share of the income earned by that company during 2008 and was not increased by any distribution or payment. Her own accountant acknowledged as much: "The distributions do not change the tax liability reflected on K–1 on line 1. The income distributed—the income reported to an individual is what the tax is paid on, not the distribution."

[¶ 15] The appellant also argues that because the $1,100,000 was drawn on her capital account in ISI, the payment represented the income attributable to her for 2008 and therefore cannot be a property settlement payment. Although it is not clear, the appellant seems to be suggesting that she is owed the value of her capital account in addition to any payments pursuant to the divorce. A capital account does not, however, serve as a bank account from which a shareholder can withdraw money. Its purpose is to keep track of a shareholder's investment in the company and his basis in his stock. "A subchapter S corporation monitors its retained corporate earnings using an account which is then used to determine each shareholder's basis for taxed but undistributed corporate income." *In re Marriage of Joynt,* 375 Ill.App.3d 817, 314 Ill.Dec. 551, 874 N.E.2d 916, 919 (2007). Like any other corporation, an S corporation may choose to retain net profits for operating expenses. For that reason, shareholders in S corporations may be taxed on income they never actually receive. *In re Marriage of Matthews,* 40 Kan.App.2d 422, 193 P.3d 466, 469 (2008). When the assets previously owned jointly by the parties were divided, neither had any continuing rights to the assets received by the other party. "[R]etained earnings and profits of a subchapter S corporation are a corporate asset and remain the corporation's property until severed from the

---

5. In fact, should he choose to sell the stock in ISI he received from the appellant, the appellee will face greater tax liability as a result of the basis reduction.

other corporate assets and distributed as dividends." *In re Marriage of Joynt*, 314 Ill. Dec. 551, 874 N.E.2d at 919. The appellant did not have a right to any of the income earned by ISI, much like the appellee no longer had a right to Great Basin Industries' assets.

[¶ 16] Like many taxpayers, the appellant may have been caught off guard by an unexpectedly high tax liability. There is, however, no indication that this was the result of double dealing by her ex-husband.[6] The appellant received the money she was owed from her ex-husband without any additional tax liability, regardless of the fact that the money was drawn from an S corporation in which he was the sole owner, rather than from a personal account.

## CONCLUSION

[¶ 17] The appellant received a payment from the appellee pursuant to their Property Settlement Agreement following their divorce. The appellee paid the appellant with funds from an S corporation he received in the divorce. The appellant contends that because she had previously been a shareholder in this S corporation, the payment constituted a dividend and impermissibly increased her income tax liability. We disagree. The appellant was taxed properly on income earned by the S corporation due to her previous stake in the company. The distribution did not increase her tax liability. Therefore we affirm.

---

6. The, perhaps, surprisingly high tax liability was likely the result of ISI's 2008 switch from the cash to the accrual method of accounting. The accrual method of accounting requires that income is calculated based on when an invoice is issued, rather than when the payment is actually received, as with the cash method. 33A Am. Jur.2d *Federal Taxation* §§ 6150, 6200 (2012). The result is that in the initial months following a switch to the accrual method, estimated taxes will be higher than before the switch because income will be reported earlier. In reality, the appellant's ex-husband was also burdened by additional taxation as a result of the switch to the accrual method.