# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 97

### APRIL TERM, A.D. 2013

### August 13, 2013

IN THE MATTER OF ARF, a minor child:

JKS,

Appellant
(Petitioner),

v.

AHF,

Appellee
(Respondent).

No. S-13-0031

*Appeal from the District Court of Natrona County*
*The Honorable David B. Park, Judge*

*Representing Appellant:*
    Keith R. Nachbar, Keith R. Nachbar, PC, Casper, Wyoming.

*Representing Appellee:*
    Richard H. Peek, Attorney at Law, Casper, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Justice.**

[¶1]     In this paternity proceeding, Father, JKS, appeals the district court's decision to grant custody of their eight-year-old daughter, ARF, to Mother, AHF.  He also challenges the district court's calculation of child support arrearages and its imposition of time limits on the parties' trial presentations.  We will affirm the district court's decisions with respect to custody and the time limits.  However, because the district court's order does not comply with the statutory mandate to set forth the presumptive child support amount, we must reverse and remand the district court's child support decision.

## ISSUES

[¶2]     We have rephrased and reordered the issues presented by Father as follows:

> 1.  Did the district court abuse its discretion in awarding custody to Mother?
>
> 2.  Did the district court commit reversible error in its calculation of child support arrears?
>
> 3.  Did the district court abuse its discretion in imposing a 160-minute limitation on each party's trial presentation?

## FACTS

[¶3]     In 2012, Father filed suit to establish his paternity of ARF, who was born in 2004. He sought custody of ARF, and asked the district court to order Mother to pay child support.  Mother admitted Father's paternity, but asserted that she should have custody and Father should pay child support.  Factual details relating directly to each issue will be reviewed in our discussion below.

[¶4]     After a one-day hearing, the district court granted custody to Mother and established visitation for Father.  The district court ordered Father to pay $465 per month in child support.  It found that Father owed an additional $24,482 in child support for previous years, and ordered Father to pay $100 per month against this arrearage.  Father appealed the district court's decision.

## DISCUSSION

## I.     CUSTODY OF ARF

[¶5]     Child custody is a question committed to the sound discretion of the district court. *Arnott v. Arnott*, 2012 WY 167, ¶ 11, 293 P.3d 440, 444 (Wyo. 2012).  Accordingly, we

1

review the district court's child custody decision for abuse of discretion.

> We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) (internal citations omitted).

[¶6]    Father contends that the district court abused its discretion in granting custody to Mother. His contention stems from the fact that Mother's live-in fiancé was convicted in 2000 on one charge of third degree sexual assault and two counts of sexual exploitation of a child. The victims were girls aged thirteen and fourteen. Father argues, in summary, that he is a good and loving father with strong family support from his wife and his parents, and can offer a safe and stable home for ARF. In contrast, he claims that evidence of the fiancé's criminal history demonstrates that placing custody with Mother "seriously endangers the safety" of ARF. The district court abused its discretion, according to Father, when it ignored this evidence of endangerment.

[¶7]    The district court explained its child custody decision in oral remarks near the end of trial. It specifically noted that "neither parent is a bad parent." It observed that ARF had been living with Mother for the past eight years, and indicated that the basic question was whether it was in ARF's best interest to remain in Mother's home, or to be removed and placed with Father. Based on "the facts that have been presented," the district court concluded that it was in ARF's best interests for Mother to retain custody.

[¶8]    As we review the record to determine whether there is evidence to support the district court's decision, the applicable standard of review requires us to consider the evidence "in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence." *Durfee*, ¶ 6, 199 P.3d at 1089. Viewed in this light, there is ample evidence in the record to support the district court's decision.

[¶9]    Mother has always had custody, although ARF has spent substantial amounts of time with Father, his wife, and his parents, particularly during the earliest years of her life. Mother testified "that what would be best for [ARF] is for her to remain in my home, because that is what she has known for the last eight years. And I – I will not

2

refuse any visitations to [Father]." Mother thought it would be detrimental to ARF to remove her from Mother's home and place her with Father. A child and adolescent psychiatric nurse who had evaluated the relationship between Mother and ARF testified "That [ARF] very much enjoyed spending time with her mom; that she looked to her mom for answers and directions; that they obviously appeared familiar. They were light-hearted, a mutual respect. And it seemed sort of an overall happy mother/child relationship."

[¶10] Both Mother and her fiancé have held the same jobs for several years. Mother takes ARF to daycare very early in the morning, on her way to work. However, the psychiatric nurse testified that this was not a concern, and that ARF did not spend "excessive" time in daycare. The daycare provider testified that ARF enjoyed coming to daycare and being with her friends. Mother testified that ARF was doing well in school.

[¶11] There is evidence supporting the district court's conclusion that Father was not a bad parent, but there is also evidence that suggests some concerns. Father has held numerous jobs over the years. For the past few years, he has lived in an apartment in his parents' basement without paying rent. There is evidence that, when ARF was in Father's home, she was watched primarily by his parents or his wife. Mother testified that ARF did not always get her medication as prescribed when she stayed with Father.

[¶12] Given this evidence, we cannot say that the district court's decision was unsupported or unreasonable. The record also demonstrates that the district court did not ignore the evidence of the fiancé's criminal history. To the contrary, the matter was directly addressed in comments near the close of trial. The district court observed that the fiancé:

> made a grievous error a number of years ago. He did a terrible thing. There is no question about that. I'm not debating that. However, all of the evidence before me is that he has done what the criminal justice system demands of him; and that is, he has addressed his problem and done his best to rehabilitate himself.

[¶13] Evidence in the record supports the district court's finding on the fiancé's rehabilitation. Two expert witnesses testified that the fiancé was unlikely to reoffend. The first expert was a licensed clinical social worker who has worked with sex offenders for several years. The fiancé, during four years of parole after his release from prison, participated in weekly counseling sessions led by this social worker. The social worker had also conducted joint sessions with Mother and the fiancé. The social worker testified that the fiancé had successfully completed all of the requirements of the counseling program and parole.

[¶14] In the social worker's opinion, the fiancé had been at a low risk of reoffending when he completed his parole in 2010. Two years later, at the time of the trial, the social worker believed the fiancé presented a "very, very low risk" of reoffending. He specifically said he had no concerns about ARF living in the same home as the fiancé.

[¶15] The second expert witness was the psychiatric nurse mentioned above. As part of her evaluation, she also spent time with the fiancé and considered additional information about his prior convictions. She testified that she had no concerns for ARF's safety, and no concerns about her staying in a home with Mother and her fiancé.

[¶16] Father maintains that both expert witnesses were discredited on cross-examination. But "issues of credibility and the weight to be given to testimony are matters to be resolved by the trier of fact, not an appellate court. Thus, we may not substitute our judgment for that of a trial court with respect to issues concerning credibility." *Yoeuth v. State*, 2009 WY 61, ¶ 31, 206 P.3d 1278, 1286 (Wyo. 2009), quoting *Carter-Wallop v. Wallop*, 2004 WY 46, ¶ 10, 88 P.3d 1022, 1025 (Wyo. 2004). Moreover, as required by the applicable standard of review, we consider the evidence "in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence." *Durfee*, ¶ 6, 199 P.3d at 1089. Viewed in that light, evidence of fiancé's rehabilitation and low risk of reoffending provides a reasonable basis for the district court's decision. We cannot conclude that it was an abuse of discretion to award custody to Mother.

[¶17] Father's additional argument is based on testimony by Mother and her fiancé that, in light of the fiancé's past, they had always followed "safety procedures" meant to protect both ARF and the fiancé. The fiancé never stayed alone with ARF, he limited physical contact with her, and he did not let her sit on his lap. Father asked the district court to impose these restrictions as requirements of the custody order. Mother had no objection because, as she explained, "we have been doing that for many, many years now." Both expert witnesses believed that the safety procedures were important, and suggested that the district court incorporate them into the custody order. Despite the witnesses' uniform views, however, the district court's order did not impose the safety procedures. Father contends that this was an abuse of discretion.

[¶18] The district court's oral explanation was as follows:

> Now, it occurs to me that both sides have addressed my doing something that [ARF] is not to be alone with [the fiancé]. There [are] a couple [of] problems with that. [Fiancé] is not under my jurisdiction, so I can't order him to do anything. I'm not inclined to order [Mother] to do anything for a couple of reasons that I probably should state. One, even before these matters were filed, they had these

4

boundaries set up; two, it looks to me like [Mother] has [ARF's] serious best interest seriously at heart. She doesn't need an order to continue to protect her. And I think such an order would be – create – would create great difficulties and [be] difficult to enforce. I would have to order [Mother] to not [allow] any contact, and there's all kinds of things that could come up, emergencies and things like that. So it's obviously in [Fiancé's] best interest to avoid problems that will place him [in] jeopardy of being accused of something; and it is more importantly [Mother's] best interest to continue to protect [ARF]. So I'm declining to enter that kind of an order. I'm comfortable that [Mother] will do it on her own.

In light of this explanation, we are unable to conclude that the district court's decision not to impose the safety procedures as requirements of the custody order was unreasonable or an abuse of discretion.

## II.   CHILD SUPPORT

[¶19] The standard of review applicable to Father's child support issue has been explained as follows:

> The district court has broad discretion in determining the proper amount of a child support award. We will disturb the district court's ruling only upon a showing that the district court has abused its discretion. Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law. Thus, the standard we apply is whether or not the court could have reasonably concluded as it did.

*Sharpe v. Sharpe*, 902 P.2d 210, 213 (Wyo. 1995) (internal citations omitted).

[¶20] Father claims that the district court erred in the way it calculated the amount of child support arrearage Father owed. Father characterizes the district court's decision-making process as follows:

> After being handed a six page scribbled "calculation" of child support arrears after the evidence was closed and during the last few seconds of [Mother's] closing argument, the trial court simply adopted wholesale with no analysis, consideration, or discretion the total arrearage amount submitted by [Mother's] counsel.

5

According to Father, the district court made numerous errors in its calculation of the child support arrearage. For example, Father claims that the district court determined his 2009 income from his tax return, even though it was a joint tax return reflecting the income of both Father and his wife.

[¶21] The record precludes us from considering the errors asserted by Father. The calculations provided by Mother's counsel were not admitted into evidence, and so are not included in the record on appeal. Mother's calculations are attached as an appendix to Father's brief, and Father's calculations are attached to her brief, but a party "cannot supplement the appellate record by attaching documents to his brief." *ADA v. SA*, 2006 WY 49, ¶ 10 n.1, 132 P.3d 196, 201 n.1 (Wyo. 2006). Neither party sought to supplement the record pursuant to W.R.A.P. 3.04. We cannot review the calculations because "[n]ormally we do not consider matters outside the record on appeal." *Harvey v. State*, 835 P.2d 1074, 1080 (Wyo. 1992); *Barnes v. Barnes*, 998 P.2d 942, 945 (Wyo. 2000).

[¶22] Our review is also hampered by the fact that the district court's order contains no findings as to the parties' incomes. As noted above, Father claims that the district court determined his 2009 income from his tax return, even though it was a joint tax return reflecting the income of both Father and his wife. However, the order makes no finding as to Father's 2009 income, making it impossible for us to determine whether the district court was correct or not.

[¶23] Finally, the district court's order does not include the presumptive child support amount. In Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2011), the legislature established a formula for determining presumptive child support amounts based on the combined incomes of both parents. In Wyo. Stat. Ann. § 20-2-307(a), the legislature further provided that:

> The presumptive child support established by W.S. 20-2-304 shall be rebuttably presumed to be the correct amount of child support to be awarded in any proceeding to establish or modify temporary or permanent child support amounts. Every order or decree providing for the support of a child shall set forth the presumptive child support amount and shall state whether the order or decree departs from that amount.

This statute states that every child support order or decree "shall" set forth the presumptive child support amount, and "we have repeatedly found the word 'shall' in a statute to be mandatory." *LM v. Laramie County Dep't of Family Servs.*, 2007 WY 189, ¶ 5, 171 P.3d 1077, 1080 (Wyo. 2007).

[¶24] The district court's order in this case does not set forth the presumptive child

6

support amount. It orders Father to pay $465 per month in current child support, but does not state whether that is the presumptive amount or a departure from it. These are mandatory components of a child support order pursuant to Wyo. Stat. Ann. § 20-2-307. The order also contains no findings with regard to the parties' incomes, which are the necessary bases for calculating presumptive child support in accordance with Wyo. Stat. Ann. § 20-2-304.

[¶25] We have previously ruled that a child support order must be reversed if it does not satisfy the statutory mandate:

> The district court ordered Husband to pay monthly child support in the amount of $1,000. This amount appears to be based upon the amount of child support Husband agreed to pay during the pendency of the divorce. The district court made no findings specifically supporting the amount ordered. Wyo. Stat. Ann. § 20-2-304(a) (LexisNexis 2005) provides for presumptive child support based upon the combined net income of both parents. Wyo. Stat. Ann. § 20-2-307(a) (LexisNexis 2005) mandates that the presumptive child support amount be set forth in the district court's order or decree. The district court failed to identify the statutory presumptive child support or even make basic findings of fact that would allow for the calculation of child support. Because the district court failed to comply with this initial requisite step, its child support order must be reversed.

*Moss v. Moss*, 2007 WY 67, ¶ 12, 156 P.3d 316, 319 (Wyo. 2007). The district court's order in this case must be reversed and remanded. Our decision is not intended to direct what the child support amounts should be. To the contrary, as in *Moss*, ¶ 13, 156 P.3d at 319, we emphasize that the question of child support on remand "is for the district court to resolve within its sound discretion." The resulting order must, however, comply with Wyo. Stat. Ann. § 20-2-307.

## III.   TIME LIMITS ON TRIAL PRESENTATIONS

[¶26] Father's third issue is a challenge to the time limits imposed by the district court at trial. We traditionally afford district courts considerable discretion in conducting trials. For that reason, we review Father's third issue using an abuse of discretion standard. *Benjamin v. State*, 2011 WY 147, ¶ 32, 264 P.3d 1, 10 (Wyo. 2011). In this context, "the ultimate issue is whether the court could reasonably conclude as it did." *Id*.

[¶27] On April 11, 2012, Mother filed a request for a one-day trial setting. On May 31, 2012, the district court issued an order setting a one-day trial on October 9, 2012. It also

7

issued an accompanying "Time Management Order" specifying that the parties would divide the allotted time equally, with each trial presentation limited to 160 minutes in total. On appeal, Father describes the time limits as arbitrary and a denial of a fair trial and due process, and therefore an abuse of discretion.

[¶28] Notice and the opportunity to be heard are touchstones of due process. *Pecha v. Smith, Keller & Associates*, 942 P.2d 387, 391 (Wyo. 1997). The opportunity for hearing must be "'appropriate to the nature of the case,'" and must be "'at a meaningful time and in a meaningful manner.'" *Jones v. Jones*, 903 P.2d 545, 548 (Wyo. 1995) (quoting *Moore v. Board of Educ. of Fulton Public School No. 58*, 836 S.W.2d 943, 947 (Mo. 1992)). *See DH v. Wyo. Dep't of Family Servs.*, 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003). In certain circumstances, time limits on trial presentations might deprive a party of a meaningful hearing. *See, e.g., In re Marriage of Goellner*, 770 P.2d 1387, 1389 (Colo. App. 1989) ("[B]ecause the mother was allotted only one-half hour to present her case-in-chief, we conclude that she was denied due process.").

[¶29] The case before us does not present such circumstances. Father complains that the time limits were imposed before the trial court knew anything about the details of this case, or the issues that were in dispute. His argument overlooks the fact that the time limits were imposed as a result of Mother's request for a one-day trial setting. Father did not object. It was not arbitrary for the district court to set a one-day trial as requested, or for it to give each party half of the trial time.

[¶30] It may be that unexpected or difficult issues developed after the time management order was entered. If so, Father did not bring those developments to the attention of the district court. He filed no motion to increase the time allotted for trial. He did not request a pretrial conference. He raised no pretrial objection of any sort. Father has presented no authority suggesting that it was the district court's obligation to monitor the progress of the case and make *sua sponte* adjustments to the trial setting.

[¶31] Father claims he did not seek an increase in his allotted time because the district court's order "was worded in such a way to lead [Father's] counsel to believe that the time limit imposed therein was absolute: the trial judge had already ruled on the length of time he was willing to allow for this trial and that it was not subject to further debate." The text of the time management order is as follows:

> This matter having [come] before the court for review and the court having considered the pleadings and the time allotted for the proceedings set in this matter finds that a Time Management Order should issue.

> **IT IS THEREFORE ORDERED THAT:**

1.    This matter is currently set to be heard on Tuesday, October 9, 2012, from 9:30 a.m. to 12:00 p.m. and from 1:30 p.m. to 5:00 p.m.  The parties should anticipate that the court will strictly adhere to this schedule.

2.    The trial time will be divided equally, with each of the respondents getting 160 (one hundred sixty) minutes of total time for opening statements, presentation of evidence, cross-examination, and argument.  Delays occasioned by a party will be deducted from that party's allocated time.

3.    Absent compelling circumstances, the parties should anticipate that the court will not continue the proceedings to another date for additional evidence or argument.

The language of the time management order does not support Father's claim.

[¶32]  Father first objected to the time limits during the trial, after using 151 of his 160 allotted minutes.  He asserted that the time limits put him at a disadvantage because, as petitioner, Father had to present his case first and provide certain background information.  He also asserted that the hearing on Father's motion to exclude one of the witnesses should not have been included in his time limit, as he had earlier requested that the hearing be held prior to trial.  He asserted that "it's a denial of due process to count that time against me when we have eight years of information to cover over the custody of a young child."

[¶33]  The district court provided this response:

Well, let me just say this – and I've said it I don't know how many times in the past, about three years – the parties have unlimited time in these [trials].  The only thing I ask is that when you make a request for the time, that is the time that is allocated.  There are a number of reasons for that.  One, so that I can plan my schedule.  Two, I do not like having these held in different parts.  Two consecutive days is fine.  Three consecutive days is fine.  But doing one day and then coming back several months later is not fair to me and it's not fair to the parties, especially the party that has to be first, because I have impressions that I have to attempt to re-create.  So when it's set for a day and there is no objection, I assume that both parties believe that they have adequate time to present their

9

case. And since I didn't hear an objection in this case, we
went ahead with the day.

The district court also noted that the hearing on the motion to strike the witness "was actually about ten minutes or maybe less." Although the district court continued to enforce the time limits in general, it did give each party extra minutes for closing arguments.

[¶34] The district court has a legitimate interest in planning its schedule. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 610 (3d Cir. 1995) ("[A] court's resources are finite and a court must dispose of much litigation."). We also evaluate the district court's explanation in light of our decision in *Jackson Hole Traders, Inc. v. Joseph*, 931 P.2d 244, 248 (Wyo. 1977):

> Appellants do not point us to any authority which prohibits trial courts from limiting parties to the amounts of time that they specified they would need to fully present their cases. The trial court in this case did not arbitrarily limit the substance of the evidence which Appellants wanted to present; it merely limited the time in which they were allowed to present it to the amount of time which they had indicated that they thought would be sufficient.

In the case before us now, the district court limited the parties to the amount of time requested by Mother, without objection from Father. The district court did not control the substance of the evidence or arguments, only the total time of the trial presentations. Father has pointed to no unexpected developments during trial that rendered the time limits impractical. *See Maloney v. Brassfield*, 251 P.3d 1097, 1103 (Colo. App. 2010). Given this analysis, the time limits imposed by the district court did not deny Father his rights to due process. They were not unreasonable under the circumstances, and the district court's decision to enforce them was not an abuse of discretion.

## *CONCLUSION*

[¶35] The district court's decision on child support is reversed and remanded for proceedings consistent with this opinion. The decision is affirmed in all other respects.