KAUTZ, Justice.
[¶1] Appellant Arsenio Lemus (Father) appeals from the district court's order awarding primary custody of the parties' two children and child support to Appellee Merissa Martinez (Mother). Father claims the district court abused its discretion in determining child support, specifically challenging its calculation of his income. He also asserts the district court violated his right to due process by limiting his direct testimony and his cross-examination of Mother's witnesses.
[¶2] We reverse the district court's child support order and remand for further proceedings.
ISSUES
[¶3] Father presents two issues on appeal:
1. Did the district court abuse its discretion when it calculated the amount for child support based on a misunderstanding of the evidence establishing Father's income?
*833 2. Were Father's constitutional due process rights violated when the district court precluded him from fully testifying and cross-examining witnesses because of time limits?
Mother includes an additional issue:
3. Is [Mother] entitled to attorney fees and costs against [Father] pursuant to W.R.A.P. 10.05 ?
FACTS
[¶4] Mother and Father were not married, but they had two children together-JAL (born in 2006) and AKL (born in 2011). The family lived together for several years, and Father's older children occasionally lived with them. Eventually, the parties' relationship soured, and on November 7, 2016, Father filed a petition in the district court to establish child custody, visitation and child support. He sought sole custody of the children, subject to Mother's visitation. Father also requested that the court order Mother to pay child support. Mother responded to Father's petition and counterclaimed for sole custody of the children and for an order awarding her child support.
[¶5] The case was set for a one-day bench trial on September 5, 2017, with the time evenly divided between the parties, "minus breaks" and "any time attributable to [the guardian ad litem (GAL) ]." The court cautioned both parties that time was limited and they needed to be "aware of the implications of running out of time." The district judge periodically informed the parties of the amounts of time they had used.
[¶6] A few days before trial, Father filed a confidential financial affidavit on the form mandated by Wyo. Stat. Ann. § 20-2-308 (LexisNexis 2017). He indicated he was both employed and self-employed. Father stated he was employed by Laramie Valley Contracting & Roofing Services, Inc., and earned a monthly salary of $ 12,525. Later in the form, he declared his gross income from his employment was $ 9,491. After deducting monthly taxes of $ 2,086 and the monthly premium for the children's health insurance, he arrived at a monthly net income of $ 7,030. Father did not provide any documentation verifying his employment income, such as pay stubs or W-2 forms.[1] He also did not provide information about his self-employment income, as directed in the confidential affidavit form.
[¶7] Father attached the first two pages of his tax returns for 2014 and 2015 and part of an amended 2014 return to his confidential financial affidavit. He indicated he had requested an extension to file his 2016 tax return and it was due on October 15, 2017. Father did not supplement his confidential financial affidavit with the 2016 return after trial. The tax returns he provided did not show any wages, salaries or tips. The only income reported on the tax returns was on line 17 for "[r]ental real estate, royalties, partnerships, S corporations, trusts, etc." The tax returns directed that Schedule E forms be attached, but they were not included in Father's court filings. According to the IRS website, Schedule E is used to report income or loss from the entities identified in line 17. https://www.irs.gov/forms-pubs/about-schedule-e-form-1040.
[¶8] Father reported his total income on his 2014 tax returns as $ 106,874[2] and on his 2015 tax return as $ 150,307. Father's 2015 income of $ 150,307, divided by twelve months, results in a monthly income of $ 12,525.58, which is consistent with one of the amounts reported in his confidential financial affidavit as being income from his employment with Laramie Valley Contracting. Father did not provide tax returns, Schedule K-1s,[3] or income and expense reports for his business entities.
*834 [¶9] During opening statement, the GAL drew the district court's attention to the insufficiency of Father's confidential financial affidavit and the lack of supporting documentation. She stated:
I would like to bring one more matter before the Court that I would ask the Court take into consideration, which is a confidential financial affidavit by [Father] was filed very, very late in this case, and so really not allowing for the time to really deeply analyze or investigate, but I would like the Court to take judicial notice that he did not provide a 2016 tax -- his taxes, nor did he provide a[n] ... independent statement. And from his own admissions, I believe that [Father] will testify that he is also the owner of the Arsenio Lemus Holdings, LLC, and there has been no reporting with regard to the income that he receives from that.
Also, [Father] had indicated to me that he also is part owner in an establishment, a bar here in town, and I've gotten -- no disclosures have been made, and I believe I would like to ask the Court to consider whether or not we need to delay a decision with regard to child support until a proper confidential financial affidavit may be brought before the Court.
The district court stated it would "certainly return to that question before taking the matter under advisement." In the end, though, the district court determined child support without requiring more information about Father's finances.
[¶10] Father did not testify about his financial status during his direct examination. On cross-examination, Father testified he had interests in several companies, including Laramie Valley Contracting, Arsenio Lemus Holdings, and Opportunity Knocks. He did not explain the business structure of any of these companies, although a handwritten note which appears to have been added to the confidential financial affidavit identifies Laramie Valley Contracting as a corporation. He testified his companies were "pass through" entities for income tax purposes.[4] Father said that, given the pass-through nature of his businesses, all of his income was reported on his personal tax returns.
[¶11] As part of his business dealings, Father owns approximately 50 rental units. The GAL questioned Father about income from the rentals:
Q. ... [W]hat is the rent range for each one of those units?
A. It can vary anywhere from the cheapest one I own is probably, maybe in the range of [$]395, all utilities included, all the way up to a [$]1,050, [$]1,300 if you have a residential home.
The record contains no documentation showing Father's gross income from Laramie Valley Contracting, the rentals, or any other business interests. There is also no information about the business deductions he took to arrive at the income figures shown on his 2014 and 2015 tax returns.
[¶12] Mother testified that she had worked for Father and believed his rental income was around $ 45,000 per month and his income from Laramie Valley Contracting "depends on the month, between -- it could be [$]10,000 or [$]80,000 for that month." She believed he earned "[$]450,000 plus" per year, depending upon the year. She also disputed Father's confidential financial affidavit showing that he earned $ 7,030 in net employment income from Laramie Valley Contracting. She said he did not get a paycheck because he was self-employed.
[¶13] The district court directed the parties to file written closing arguments and/or proposed findings of fact and conclusions of law. In her closing argument, the GAL stated:
*835 Prior to determining child support, [Father] should be ordered to turn over complete tax returns, W-2s, and/or verified income and expense statements for all three of his business[es] that, among other things, must disclose exactly how much depreciation [Father] is claiming on his federal taxes. Such ordered disclosures should include income information for the tax year of 2016 for which [Father] has provided no documentation.
[¶14] Mother's closing argument also emphasized the insufficiency of Father's financial disclosures. However, rather than asking the district court to delay a child support ruling and order Father to provide correct documentation, Mother asked the court to impute a net monthly income of $ 25,000 to Father, resulting in a presumptive monthly child support obligation of $ 3,520. Father filed proposed findings of fact, conclusions of law and judgment, requesting the district court to award him primary custody of the parties' children and order Mother to pay him "child support in the minimum amount of $ 50.00 per month."
[¶15] Five months after the trial, the district court held a hearing to orally deliver its decision. The district court awarded Mother primary custody of the children, subject to Father's visitation. With regard to child support, the district court stated Father's financial affidavit was "totally incomplete and unsatisfactory." The district court then said, "the only rational way to conform [Father's] testimony to the financial affidavit[ ] and the tax returns is to find that he has two forms of income." The court determined his monthly wages, presumably from Laramie Valley Contracting, after taxes were $ 7,030. It ruled that the income shown on his tax returns was "only rental income." The court concluded that, for 2014, Father's net rental income was $ 87,200, which it calculated by subtracting $ 17,800 for taxes from $ 105,000 in rental income.[5] For 2015, the district court found that Father's rental income was $ 150,307 and he paid $ 32,373 (sic $ 32,273) in tax, resulting in a net rental income of $ 117,934.
[¶16] The district court averaged Father's 2014 and 2015 net rental incomes as $ 102,566 and divided that amount by twelve for a monthly rental income of $ 8,547. The district court added Father's monthly rental income to his wages for a "total net [monthly] income for purposes of child support [of] $ 15,577." The court then calculated Father's presumptive monthly child support obligation as $ 2,588.
[¶17] The parties could not agree on a written order incorporating the district court's oral ruling, so after clarifying a few matters at a hearing on April 18, 2018, the district court entered a written order on June 28, 2018. The written order was consistent with the court's oral ruling with regard to child custody and child support. Father appealed.
DISCUSSION
1. Child Support
[¶18] We review the district court's order on child support by applying the abuse of discretion standard. Bagley v. Bagley, 2013 WY 126, ¶ 6, 311 P.3d 141, 143 (Wyo. 2013).
A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Pinther v. Pinther, 888 P.2d 1250, 1252 (Wyo.1995) (quoting Dowdy v. Dowdy, 864 P.2d 439, 440 (Wyo.1993) ). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Triggs, 920 P.2d at 657 ; Cranston v. Cranston, 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Jones v. Jones, 858 P.2d 289, 291 (Wyo.1993).
*836 Stevens v. Stevens, 2014 WY 23, ¶ 8, 318 P.3d 802, 806 (Wyo. 2014) (quoting Bingham v. Bingham, 2007 WY 145, ¶ 10, 167 P.3d 14, 17-18 (Wyo. 2007) ).
[¶19] Father claims the district court abused its discretion in determining his income. Under Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2017), the parents' net monthly income is used to calculate presumptive child support. See Egan v. Egan, 2010 WY 164, ¶ 9, 244 P.3d 1045, 1048 (Wyo. 2010). The court begins by determining each parent's monthly income and net income using the statutory definitions in Wyo. Stat. Ann. § 20-2-303(a)(ii) and (iii) (LexisNexis 2017):
(ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, supplemental nutrition assistance program and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed[.]
(iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]
[¶20] Section 20-2-308 addresses the documentation required to determine the parties' incomes for child support purposes:
(a) No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received.
(b) Financial affidavits of the parties shall be supported with documentation of both current and past earnings. Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed. Documentation of current earnings shall be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.
[¶21] Section 20-2-308 's requirements are mandatory. Verheydt v. Verheydt, 2013 WY 25, ¶ 32, 295 P.3d 1245, 1253 (Wyo. 2013). See also , Noonan v. Noonan, 2005 WY 145, ¶ 8, 122 P.3d 964, 966 (Wyo. 2005) ; JAG v. Dep't of Family Servs., 2002 WY 158, ¶¶ 17-18, 56 P.3d 1016, 1021 (Wyo. 2002). Under the statute, "no order" on child support "shall be entered" unless financial affidavits or testimony which "fully discloses the financial status of the parties" has been received by the district court. Section 20-2-308(a). Section 20-2-308(b) requires financial affidavits be supported with documentation of current and past earnings, including but not limited to pay stubs, employer statements, receipts and expenses if self-employed, and copies of tax returns.
[¶22] As we explained in detail above, Father's financial affidavit indicated he was both employed and self-employed; however, he only reported employment income from Laramie Valley Contracting in his affidavit. He gave two different numbers as his monthly employment income -- $ 12,525 and *837 $ 9,491 which, when reduced by taxes, resulted in a net income of $ 7,030. Father testified that he reported his income from all sources on his tax returns. Despite his representation that he was an employee of Laramie Valley Contracting, Father's tax returns for 2014 and 2015 did not include any wages or salaries. All of his reported income came from rentals, partnerships, S corporations, etc. Thus, Father's tax returns and his confidential affidavit are completely inconsistent.
[¶23] Father's testimony did not clarify his income. He said he was an employee of Laramie Valley Contracting and explained it was the only one of his companies that "pays payroll." He admitted, however, that he did not have a copy of his W-2. Mother said he did not get a payroll check because he was self-employed. From the record, it is impossible to determine whether Father received a salary as an employee in addition to "pass through" income from business entities, or whether he incorrectly described his income obtained as an owner of Laramie Valley Contracting as employee income.
[¶24] The GAL twice asked the district court to delay ruling on child support and order Father to supplement his financial information with complete tax returns (including for 2016), W-2s, and verified income and expense statements for all three of his businesses. She also requested that Father be required to include information about how much depreciation he deducted to determine the business income shown on his tax returns. This was an important point because, while amortized depreciation of business property is a legitimate deduction for federal income tax purposes, it is not deductible from a party's income as a "reasonable unreimbursed legitimate business expense" to determine child support. Section 20-2-303(a)(ii) ; Houston v. Smith, 882 P.2d 240, 243-44 (Wyo. 1994). See also , Ready v. Ready, 2003 WY 121, ¶ 14, 76 P.3d 836, 840 (Wyo. 2003). Compare, Watson v. Watson, 2002 WY 180, ¶¶ 14-16, 60 P.3d 124, 128 (Wyo. 2002) (holding that federal income tax deduction under 26 U.S.C. § 179 is a legitimate business expense deduction under § 20-2-303(a)(ii) because it affects the obligor's actual cash flow during the year in question).
[¶25] The district court recognized in its order that the information before it regarding Father's income was "totally incomplete and unsatisfactory," yet it proceeded to determine child support without ordering Father to provide sufficient financial information. Given the inconsistencies in Father's financial affidavit and the failure of the trial testimony to explain the numbers, there is simply no factual basis for the district court's choice of $ 7,030 as representing his monthly wage or salary from Laramie Valley Contracting. Additionally, without more information regarding Father's business income and deductions, it was impossible for the district court to determine his net income for child support purposes.
[¶26] Section 20-2-308 requires the district court to ensure the parties provide sufficient financial information, in the form of proper financial affidavits and/or trial evidence, before it makes a child support determination. Verheydt, ¶ 32, 295 P.3d at 1253 ; Noonan, ¶ 8, 122 P.3d at 966 ; JAG, ¶¶ 17-18, 56 P.3d at 1021. In that regard, child support determinations are different from other civil matters where the burden of not providing sufficient evidence will result in the party with the burden of proof being denied relief. It is not uncommon for a district court to, after an evidentiary hearing, delay its decision on child support and order the parties to provide more information about their incomes. See, e.g. , Davidson v. Carrillo, 2014 WY 65, ¶ 5, 325 P.3d 444, 446 (Wyo. 2014) ; Brush v. Davis, 2013 WY 161, ¶ 7, 315 P.3d 648, 651 (Wyo. 2013). The district court in this case should have granted the GAL's request to do just that.[6]
*838 [¶27] We are cognizant of our precedent which holds that a party waives the right to object to a lack of financial information by failing to provide such information to the district court. In Verheydt, the parties stipulated to the husband's monthly child support obligation based upon an agreed imputed income, and the district court ordered the husband to pay monthly child support in accordance with their agreement. Id., ¶¶ 7, 9, 295 P.3d at 1247-48. On appeal, the husband claimed the district court had insufficient information to determine child support because he had not filed a financial affidavit and there was no evidentiary hearing on the parties' finances. Id. , ¶¶ 22, 31, 295 P.3d at 1251, 1253. We acknowledged that § 20-2-308 required the district court to obtain sufficient financial information prior to determining child support. Id., ¶ 32, 295 P.3d at 1253. However, we concluded the husband waived any objection by failing to file a financial affidavit and agreeing to resolve the issues in the case, including child support, without an evidentiary hearing. Id., ¶ 34, 295 P.3d at 1253.
[¶28] In Long v. Long, 2018 WY 26, ¶¶ 28-31, 413 P.3d 117, 126-27 (Wyo. 2018), we stated that we would not consider the husband's complaint that the district court failed to comply with § 20-2-308 when he chose to disregard his statutory obligation to provide a financial affidavit. Like in Verheydt, the parties had agreed to the amount of child support the husband would be required to pay. Long, ¶ 28, 413 P.3d at 126. The district court ordered the husband to pay less than the stipulated amount, but he complained on appeal it was still too much because he had recently been laid off his job, a fact that would have been reflected in a financial affidavit. Id., ¶¶ 29-30, 413 P.3d at 126-27. The husband asserted the district court should have required a financial affidavit, so it would have a proper understanding of his current income. Id.
[¶29] This Court rejected the husband's argument because he had failed to comply with his obligation to file the affidavit and there was information about the husband's income in the tax returns which accompanied the wife's financial affidavit. Id. Although we remanded the case for the district court to determine the presumptive support amount and whether it should deviate from that amount, we ruled the district court did not err by ordering child support without first obtaining the husband's financial affidavit. Id., ¶¶ 30-31, 413 P.3d at 126-27.
[¶30] There are important distinctions between Verheydt and Long and the case at bar. The parties in Verheydt and Long had entered into agreements about their incomes and child support obligations. Verheydt, ¶ 7, 295 P.3d at 1247 ; Long, ¶ 28, 413 P.3d at 126. Here, Father's income and the amount he owed in child support were contested. Additionally, there was no indication in Verheydt or Long that the district court considered the information before it and erred in calculating the parties' incomes. In the present case, the district court did not have sufficient information about Father's finances to calculate child support, potentially misinterpreted the evidence before it, and ignored its statutory obligation to obtain that information before entering a child support order.
[¶31] This case is similar to Bagley , which involved confusing evidence about the husband's income from his two businesses and his claimed deductions for reasonable legitimate business expenses under § 20-2-303(a)(ii). Because of the state of the evidence, the district court calculated the husband's income by using the amount he tithed to his church, assuming it was ten percent (10%) of his net income. Id., ¶ 16, 311 P.3d at 146.
[¶32] We reversed the child support determination in Bagley , reasoning:
While we understand the district court's frustration with the state of the record, it was, nonetheless, obligated to determine Husband's net income using the statutory definitions of "income" and "net income" in § 20-2-303(a)(ii) and (iii), rather than the arbitrary number associated with the amount he tithed to his church. Because *839 the district court did not follow the statutory requirements, we reverse and remand for a proper determination of Husband's net income. Starting with Father's gross income, ... the court will deduct all "reasonable unreimbursed legitimate business expenses" in accordance with § 20-2-303(a)(ii). In determining which business expenses should be deducted from his gross income, the district court must keep in mind "[t]he burden of proving that an expense was a reasonable unreimbursed legitimate business expense lies with the party seeking the deduction." Watson v. Watson, 2002 WY 180, ¶ 16, 60 P.3d 124, 128 (Wyo.2002). After calculating his income by subtracting the legitimate business expenses, other expenses identified in the definition of "net income" in § 20-2-303(a)(iii), such as personal income taxes, social security taxes, etc., may be deducted. If Husband did not do an adequate job of explaining and documenting each allowable expense, he will not be entitled to a deduction for the purposes of determining his net income. Once the amount of his net income is determined, the district court should apply the child support guidelines to determine the presumptive amount of child support. Section 20-2-304.
Id., ¶ 18, 311 P.3d at 146-47.
[¶33] The district court in the case at bar abused its discretion by ordering child support without obtaining sufficient information about Father's income. It used conflicting evidence to arrive at his monthly income and, like in Bagley, did not determine whether Father's deductions for business expenses were appropriate under the statutory definition of income. The GAL reported that Father had at least three businesses, and Father's testimony confirmed this report. However, the record contains no documentation of Father's income from two of those businesses. Accordingly, we must remand to the district court for additional proceedings to determine Father's income. In doing so, we reiterate that Father will have the burden of proving he is entitled to deductions for reasonable unreimbursed legitimate business expenses. Bagley, ¶ 18, 311 P.3d at 146-47.[7]
2. Due Process
[¶34] In his second issue, Father claims the district court violated his right to due process when it imposed time limits for the parties' presentations at trial. He asserts the district court's time limits deprived him of a meaningful opportunity to testify and cross-examine witnesses. "Notice and the opportunity to be heard are touchstones of due process." JKS v. AHF (In re ARF ), 2013 WY 97, ¶ 28, 307 P.3d 852, 858 (Wyo. 2013). See also , U.S. Const. Amends. 5 and 14 ; Wyo. Const. art. 1, § 6. "The opportunity for hearing must be 'appropriate to the nature of the case,' and must be 'at a meaningful time and in a meaningful manner.' " ARF, ¶ 28, 307 P.3d at 858 (quoting Jones v. Jones, 903 P.2d 545, 548 (Wyo. 1995) ) (other citation omitted).
[¶35] Father indicates in his brief that we need not address the constitutional due process issue if we reverse on the first issue. Our reversal of the district court's child support award will result in further proceedings on that matter, so the lack of sufficient time to present evidence at trial on that matter is moot. See Lieberman v. Wyoming.com LLC, 2004 WY 1, ¶ 2, 82 P.3d 274, 276 (Wyo. 2004) ; Scherer Const., LLC v. Hedquist Const., Inc., 2001 WY 23, ¶ 28, 18 P.3d 645, 656 (Wyo. 2001).
[¶36] However, Father also mentions in his brief that he had insufficient opportunity to present evidence or cross-examine Mother's witnesses regarding the custody determination. It is unclear whether he agrees it is unnecessary to address the sufficiency of time on the custody issue, so we will briefly address this issue.
[¶37] The district judge issued a scheduling order setting the trial on all issues between the parties for one day (September 5, 2017) and allotting each party one-half of the *840 total time, less breaks. On August 4, 2017, Father filed a witness list, identifying nine witnesses he expected to call at trial and eight "may call" witnesses. He also listed several others who could be called for rebuttal or to provide foundation for exhibits. Despite the extensive witness list, Father did not request additional time for the trial. At the beginning of the trial, the district court reiterated the trial was scheduled for only one day and the time would be evenly divided between the parties, minus any time for breaks or attributable to the GAL. Father did not object to the length of the trial or the allocation of time before the trial began.
[¶38] During the trial, Father presented eight witnesses who focused almost exclusively on the issues of child custody and visitation. He testified as the final witness for his case, and his testimony also concentrated on the custody issue. When Father's testimony began, the district court informed him that only eleven minutes of his allotted time remained. Once that time expired, the district court stopped Father's direct testimony and he was cross-examined by Mother's attorney and the GAL. Father was not permitted to cross-examine Mother's witnesses after his time ran out. Still, Father did not object, request more time, or provide an offer of proof regarding the information he was unable to present.
[¶39] A district court has considerable discretion in conducting trials. In re ARF, ¶ 26, 307 P.3d at 858. It also "has a legitimate interest in planning its schedule." Id., ¶ 34, 307 P.3d at 859. In that regard, a court may limit the length of the trial and the amount of time the litigants have to present their cases, so long as it complies with the dictates of due process. Id. , ¶ 34, 307 P.3d at 859-60 (citing Jackson Hole Traders, Inc. v. Joseph, 931 P.2d 244, 248 (Wyo. 1997) ).
[¶40] When the asserted error was preserved in the district court, we review the district court's scheduling decisions for abuse of discretion. ARF, ¶ 26, 307 P.3d at 858. However, Father did not object to the time limitations, request more time, or make an offer of proof describing the evidence he would have presented if he had more time. Under these circumstances, our precedent establishes that he waived any argument that the district court abused its discretion. See, e.g. , JN v. RFSG (In re Paternity of HLG), 2016 WY 35, ¶ 29, 368 P.3d 902, 909 (Wyo. 2016).
[¶41] Father attempts to get around the waiver rule by arguing that the district court's failure to provide adequate trial time impacted his fundamental rights to due process and to associate with family. Certainly, determinations of child custody implicate the fundamental right to family association.[8] Arnott v. Arnott, 2012 WY 167, ¶ 30, 293 P.3d 440, 454 (Wyo. 2012). See also , GS v. State (In the Interest of VS ), 2018 WY 119, ¶ 25, 429 P.3d 14, 21-22 (Wyo. 2018) (considering claim that procedure at juvenile permanency hearing violated the parent's right to due process even though it was not raised below).
[¶42] However, to avoid the waiver rule, the appellant must demonstrate that the district court's actions, if inappropriate, impacted his fundamental rights.[9] We will start with the obvious-Father does not contest the district court's custody determination. It is hard *841 to see how the court's allocation of time impacted his fundamental right to associate with his children when he does not even argue that the custody ruling was erroneous.
[¶43] Furthermore, the totality of Father's appellate argument regarding his opportunity to provide evidence on the custody issue presents conclusory statements with language related to due process concepts, but without any examples of evidence he was prevented from presenting or how it would have impacted the custody determination. Without specifics, Father's conclusory statements are nebulous and uncertain. Father's vague assertions are not sufficient to explain how the district court's restriction on the time he had to present his case violated due process or his fundamental right to associate with his children. Hodson v. Sturgeon, 2017 WY 150, ¶ 6, 406 P.3d 1264, 1265 (Wyo. 2017) (refusing to consider appellate arguments not supported by cogent argument).
[¶44] As mentioned above, Father also did not provide an offer of proof at trial regarding the evidence he was not allowed to present. His failures both on appeal and at trial to describe the evidence he would have presented or its impact on the district court's custody decision provide no "justification that would warrant our departure from [the waiver] rule." Brown v. Brown, 2016 WY 120, ¶ 16 n.3, 385 P.3d 321, 325 n.3 (Wyo. 2016) (noting that Mr. Brown did not make an offer of proof in the district court and "failed to identify any witnesses he would have called to testify at trial or exhibits that he would have introduced" had the district court not prevented him from doing so).
3. W.R.A.P. 10.05(b)
[¶45] Mother requests we award her attorney fees and damages pursuant to W.R.A.P. 10.05(b). Under the rule, if this Court certifies "there was no reasonable cause for the appeal," the appellee is entitled to "a reasonable amount for attorneys' fees and damages." Id. Given we are reversing and remanding, there was reasonable cause for Father's appeal, so we deny Mother's request.
[¶46] Reversed and remanded for proceedings consistent with this opinion.

A W-2 form is a wage and tax statement employers provide to employees and the federal government showing the employee's annual wages and the amounts withheld for federal income tax, Social Security, etc. https://www.irs.gov/forms-pubs/about-form-w-2.

The quality of the copy of the 2014 tax return provided by Father is very poor. The numbers are difficult and, in some places, impossible to read.

According to the IRS website, S corporations, partnerships, etc. use Schedule K-1 to report a shareholder's or partner's share of income from the entity. https://www.irs.gov/site-index-search?search=Schedule+K-1 & field_pup_historical_1=1 & field_pup_historical=1. See also , Teeples v. Teeples, 2012 WY 127, ¶ 5 n.1, 286 P.3d 134, 135 n.1 (Wyo. 2012) ("The function of a Schedule K-1 is to reflect a shareholder's share of the corporation's income.").

If Laramie Valley Contracting is a corporation with pass through status, it would be an S corporation for federal income tax purposes. "Shareholders in S corporations are taxed based on their pro rata share of the corporation's income."Teeples, ¶ 11, 286 P.3d at 136. See also , 26 U.S.C. § 1366(a)(1). Partnerships and limited liability companies are also pass through entities. 26 U.S.C. §§ 701 -702 (partnerships); Wyo. Stat. Ann. § 17-29-304(d)(i) (LexisNexis 2017) (limited liability companies). See also , Lieberman v. Wyoming.com LLC, 11 P.3d 353, 357 (Wyo. 2000).

We do not read the 2014 tax returns as reflecting these exact numbers. However, the returns are nearly illegible and the numbers are very close, so we will not further address these discrepancies. See Egan v. Egan, 2010 WY 164, ¶ 25, 244 P.3d 1045, 1052 (Wyo. 2010) (choosing to ignore a small discrepancy in the child support calculation).

If a party fails to comply with the statute, there are options available to the district court, including: (1) the court may find adequate information to calculate income from evidence provided by the other parties; (2) the court may order the filing of a complete financial affidavit and enforce that order by contempt; and/or (3) the court may award attorney fees to the GAL and opposing side for the costs of obtaining complete financial information. See, e.g. , Long v. Long, 2018 WY 26, ¶ 30, 413 P.3d 117, 126-27 (Wyo. 2018) (other evidence established the husband's income); Walker v. Walker, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013) (courts have authority to enforce their orders through contempt sanctions); W.R.C.P. 37 (sanctions for failure to comply with discovery obligations).

Father claims the district court erred by including "pass through" income from his various business interests in determining his gross income. If he makes this argument on remand, we assume the district court will apply the statutory definition of income and our precedent to decide the issue.

Not every claimed error in a child custody proceeding can be raised on appeal in the absence of an objection just because child custody involves a fundamental right. See, e.g ., KES v. CAT, 2005 WY 29, ¶ 20 n.1, 107 P.3d 779, 785 n.1 (Wyo. 2005) (failure to object to trial court's interview of children in a custody proceeding waived right to contest custody determination on that basis); JR v. TLW, 2016 WY 45, ¶¶ 14-15, 371 P.3d 570, 576 (Wyo. 2016) (failure to offer evidence of child's preference with regard to custody resulted in waiver of the argument on appeal).

When the appellant demonstrates that the trial court's actions may have impacted his fundamental rights, but he did not object below, we often address the matter using the plain error standard of review under W.R.A.P. 9.05. See, e.g. , GS, ¶ 26, 429 P.3d at 22 ; SAS v. Dep't of Family Servs. (In re AGS ), 2014 WY 143, ¶¶ 33-34, 337 P.3d 470, 480 (Wyo. 2014). We will not apply our typical three-part plain error test in this case because Father's argument is so imprecise. However, we note that same lack of specificity would prevent Father from establishing a violation of a clear and unequivocal rule of law and the material prejudice necessary to obtain relief under the plain error standard. GS, ¶ 26, 429 P.3d at 22.