# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 52

APRIL TERM, A.D. 2020

April 22, 2020

TYLER R. KIMZEY,

Appellant
(Defendant),

v.

S-19-0194

SHELBY K. KIMZEY,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Catherine R. Rogers, Judge

*Representing Appellant:*
    Elizabeth B. Lance, MJ Hall, Lance & Hall LLP, Cheyenne, Wyoming.  Argument by Ms. Lance.

*Representing Appellee:*
    Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Guardian Ad Litem:*
    Sarah J. Manwarren, Jacobs Polidora, LLC, Laramie, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Tyler R. Kimzey (Father) and Shelby K. Kimzey (Mother) divorced in October 2017, when they both lived in Laramie County, Wyoming.  They stipulated Mother would have primary custody of their two children and Father would have reasonable visitation.  They also agreed Father would pay child support in an amount less than the child support guidelines provided.  In Spring 2018, Mother decided to move with the children to Arizona and Father filed a petition to modify custody.  The district court appointed a guardian ad litem (GAL) to represent the best interests of the children.  After a trial, the district court increased Father's child support obligation, denied his petition to modify custody, and refused to modify visitation.

[¶2]   Father contests the district court's rulings on all issues.  The GAL filed a brief in support of Father's position regarding custody of the children.  The GAL also challenges how the district court enforced the time limits at the trial and the court's failure to make findings regarding the GAL's recommendation.  We conclude the district court did not abuse its discretion by denying Father's petition to modify custody; however, it did abuse its discretion by increasing child support and refusing to modify visitation.  The district court did not err in its treatment of the GAL.

[¶3]   We affirm in part, and reverse and remand in part.

## ISSUES

[¶4]   The issues on appeal are:

1.  Did the district court abuse its discretion by modifying child support?

2.  Did the district court abuse its discretion by concluding modification of custody was not in the children's best interests?

3.  Did the district court abuse its discretion by refusing to modify visitation?

4.  Did the district court err by cutting short the GAL's closing argument and/or by failing to make findings regarding the GAL's recommendation?

## FACTS

[¶5]   Mother and Father married in 2011 and had two children, TKK (born in 2012) and KBK (born in 2014).  Mother filed for divorce in September 2017, and the parties entered into a stipulated divorce decree a month later, in October 2017.  Under the terms of the stipulated decree, Mother received primary custody of the children, subject to Father's right to visitation every other weekend on a year-round basis or, when Father had "weekend

1

commitments i.e., coaching," he was "entitled to exercise visitation overnight on Wednesday in lieu of weekend visitation." Holiday visitation generally followed the Standard Visitation Order, but the parties agreed to split "the day" of major holidays, including Thanksgiving Day, Christmas Day and the children's birthdays. Each party was also entitled to two full weeks of uninterrupted time with the children during the summer. With regard to child support, the parties stipulated to their respective net incomes and agreed Father would pay $1,000 per month, which was a downward deviation from the presumptive monthly amount of $2,923 under the child support guidelines. Mother also received $2,000 per month in alimony under the decree.

[¶6] For the first several months after the divorce, the parties lived in Laramie County. The oldest child, TKK, attended kindergarten in Carpenter, Wyoming. He received services at school pursuant to an Individualized Educational Program (IEP). TKK previously had been diagnosed with Autism Spectrum Disorder by the Neuro Development Center of Colorado. However, by the end of his kindergarten year, his diagnosis had been changed to Attention Deficit Hyperactivity Disorder (ADHD) with a speech/language disorder.

[¶7] TKK struggled with core academic subjects, fine motor skills, speech, and language. His classroom teacher reported TKK did not respond well to change in his routine or schedule. He frequently left the classroom if he did not like what the class was doing. The teacher also said he was "rough" and "aggressive" with his classmates. TKK received in-school suspension in March 2018 for hitting a child and for choking another student by dragging him or her by the hood. The teacher stated that, on occasion, TKK's behavioral problems were significant. She noted, however, that he made a great deal of progress, both academically and behaviorally, by the end of his kindergarten year in Carpenter.

[¶8] KBK also had some behavioral issues at daycare and preschool while living in Laramie County. On November 7, 2017, he was "kicked out" of daycare in Pine Bluffs for the day because of his poor behavior. After that, Father kept the child with him during the day until Mother enrolled him in the Montessori School of Cheyenne. KBK attended the Montessori School from January through May 2018. According to the director of the school, KBK would occasionally be brought into the office for bad behavior and Mother would be called "to either come talk to him or to come get him." On one occasion, KBK punched another child in the face and he was sent home.

[¶9] Between November 2017 and July 2018, Father had more contact with the children than the decree provided. During each of those months, Father saw the kids from 11 to 21 days. He often took TKK to and from school and, when KBK was not in school, he took him to work during the day. Sometime in Spring 2018, Father learned Mother was contemplating moving out of state with the children, prompting him to file a petition to modify the decree to give him primary custody. He also requested child support be addressed in accordance with any change of custody.

2

[¶10] Mother moved to Arizona with the children in July 2018. TKK began school at a charter school close to their new home. The parties made the joint decision to have him repeat kindergarten. TKK received special education services at the charter school pursuant to an IEP, but less overall minutes of services than he had received in Carpenter. He had some behavioral problems at school, resulting in several conduct referrals and disciplinary actions. KBK was removed from daycare in Arizona because of his poor behavior.

[¶11] The district court held a two-day trial on Father's modification petition. Mother and Father each received five hours and the GAL received two hours to present their cases. The parties testified about their relationships with the children and the children's experiences in Wyoming and in Arizona. Both parties presented expert testimony about their respective incomes. The GAL cross-examined witnesses and recommended the district court award primary custody to Father.

[¶12] Later, the district court verbally announced its ruling. It concluded there was a material change of circumstances to reopen the custody portion of the decree due to Mother's relocation and the conditions surrounding it. However, it decided it was in the children's best interests for Mother to retain primary custody. The court ruled that, even though the children were being harmed by the current visitation order, there was not enough information in the record to modify it. It also concluded there was a material change of circumstances regarding child support and increased Father's obligation from $1,000 to $9,980 per month. Father appealed, and the GAL filed a brief in his support.

## DISCUSSION

### 1. Child Support

[¶13] "In general, determinations concerning child support are left to the district court's sound discretion." *Bagley v. Bagley,* 2013 WY 126, ¶ 6, 311 P.3d 141, 143 (Wyo. 2013). Therefore, we review the district court's order on child support for an abuse of discretion. *Id.*; *Stevens v. Stevens,* 2014 WY 23, ¶ 8, 318 P.3d 802, 805-06 (Wyo. 2014) (quoting *Bingham v. Bingham,* 2007 WY 145, ¶ 10, 167 P.3d 14, 17-18 (Wyo. 2007)). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." *Stevens,* ¶ 8, 318 P.3d at 806 (quoting *Bingham,* ¶ 10, 167 P.3d at 17-18) (some quotation marks and citations omitted). We review de novo any questions of law regarding child support determinations. *See Walker v. Walker,* 2013 WY 132, ¶ 44, 311 P.3d 170, 179 (Wyo. 2013) (citing *Swaney v. Dep't of Family Servs.,* 2011 WY 105, ¶ 3, 256 P.3d 514, 515 (Wyo. 2011)).

[¶14] As we stated above, the stipulated decree entered in October 2017 required Father to pay $1,000 per month in child support, which was a downward deviation from the

presumptive child support under the guidelines. In arriving at the stipulated support amount, the parties agreed on their net incomes and that, based upon those figures, Father's presumptive child support would be $2,923 per month. In addition, Father "agreed to be solely responsible for the children's medical, dental, educational, and extracurricular activities."

[¶15] Father's petition for modification requested that child support be calculated under the child support guidelines "in accordance with any [custody] modification." Mother did not request modification of Father's child support obligation. As we explain in detail below, the district court decided not to change custody (and we affirm that decision). However, it concluded modification of Father's child support obligation was warranted.

[¶16] Generally, a final judgment binds the parties and *res judicata* prevents re-litigation of matters decided therein. *See, e.g.*, *Ready v. Ready,* 2003 WY 121, ¶ 11, 76 P.3d 836, 839 (Wyo. 2003); *Smith v. Smith,* 895 P.2d 37, 41 (Wyo. 1995); *Pauling v. Pauling,* 837 P.2d 1073, 1075-76 (Wyo. 1992). A final judgment regarding child support may, however, be reopened under § 20-2-311(a):

> (a) Any party . . . may petition for a review and adjustment of any child support order that was entered more than six (6) months prior to the petition or which has not been adjusted within six (6) months from the date of filing of the petition for review and adjustment. . . . The court shall require the parents to complete a verified financial statement on forms approved by the Wyoming supreme court, and shall apply the presumptive child support set out in this article in conducting the review and adjustment. If, upon applying the presumptive child support to the circumstances of the parents or child at the time of the review, the court finds that the support amount would change by twenty percent (20%) or more per month from the amount of the existing order, the court shall consider there to be a change of circumstances sufficient to justify the modification of the support order. The provisions of this section do not preclude a party . . . from bringing an action for modification of a support order, based upon a substantial change of circumstances, at any time. . . .

[¶17] The court found Father's income was substantially higher than the amount stipulated to by the parties; therefore, his presumptive support amount would change by more than twenty percent (20%). It concluded that was a sufficient basis to reopen child support under § 20-2-311(a).

[¶18] The district court failed to consider the specific requirement for modification of a child support order when the parties previously stipulated to a child support amount which deviated from the child support guidelines. We explained in *Sharpe v. Sharpe,* 902 P.2d 210, 213-14 (Wyo. 1995):

> A . . . narrow rule regarding the petitioner's burden of proving a change in circumstances warranting modification of child support was recently announced in *Smith v. Smith,* 895 P.2d 37 [(Wyo. 1995)]. There we held that when parties enter into a stipulation or agreement which is approved by the court and that stipulation or agreement includes a stipulated amount of child support which deviates from guidelines in existence at the time the judgment was entered, to justify modification of the child support order, the parties must show some material change of circumstance other than, and in addition to, the fact that a deviation exists. . . .
>
> This policy is consistent with our view that child support agreements entered into by the parties are favored by the courts. However, even though a stipulation is an agreement between the parties, it is not a contract; and contract law has no place in the consideration of child support agreements. The primary consideration regarding child support agreements is the best interests of the children—contract law cannot abrogate this controlling consideration. When the parties agree to child support amounts, and the judgment incorporates such agreement, the district court adopts and incorporates the agreement based upon representations of the parties and based upon the finding that their agreement as to child support is in the best interests of the children. This rule also lends integrity to stipulations voluntarily entered into by the parties and adheres to the doctrine of finality of judgments which is supported by the doctrine of *res judicata.* This diminishes the needless relitigation of that which has already been decided by the district court.

(other citations omitted). Therefore, in instances where "the parties have arrived at an agreement as to child support previously, even when the support agreed to deviates by more than twenty percent from the presumptive guidelines, the petitioner must introduce other evidence of a material change in circumstances, in order to justify a modification." *Wright v. Wright,* 5 P.3d 61, 63 (Wyo. 2000).

5

[¶19]   In concluding there was a material change of circumstances to reopen the child support order in this case, the district court stated:  "[T]he evidence at the evidentiary hearing on the modification demonstrated that a material change in circumstances related to child support existed in that both parties' income has changed, particularly [the Father's]."  It continued by stating there was "a material change in circumstances here, as it concerns the parties' monthly income, for purposes of calculation of child support, between the figure that was used for [Father's] income in the 201[7] stipulated decree and the figures testified to by the certified public accountants at trial."  It then proceeded to recalculate Father's child support obligation using the child support guidelines.

[¶20]   The district court's reliance upon the change in the parties' incomes as the material change of circumstances to modify child support was clearly contrary to *Smith, Sharpe* and *Wright*.  Mother claimed at oral argument that the figure used as Father's net income in the stipulated decree was incorrect, so the district court was permitted to revisit the child support order.  "[A] court may grant relief from a stipulation for various reasons, including fraud, misrepresentation or mistake."  *Downs v. Homax Oil Sales, Inc.,* 2018 WY 71, ¶ 30, 421 P.3d 518, 526 (Wyo. 2018) (citing 73 Am. Jur. 2d *Stipulations* § 13 (2018)).  Mother made no request to set aside the parties' child support stipulation to correct a mistake or for any other reason.  Therefore, no basis existed for the district court to disregard the stipulated amounts.

[¶21]   Mother further argues that once the district court found a material change of circumstances which warranted reopening the child custody portion of the case, i.e., Mother's relocation and its attendant circumstances, it had the authority to consider all issues having to do with the best interests of the children.  She relies upon *Booth v. Booth,* 2019 WY 5, 432 P.3d 902 (Wyo. 2019), to support her argument.  The district court in *Booth* entered a divorce decree incorporating the parties' agreement that the father would have visitation in the mother's home on alternating weekends, Tuesday evenings, every other spring break, and four consecutive weeks each summer.  *Id., ¶¶* 3-4, 432 P.3d at 905. The agreement "led to a rancorous situation," and the father filed a petition to modify the decree, alleging, in part, that the parents' inability to get along during visitation was a material change in circumstances.  *Id., ¶¶* 5-6, 432 P.3d at 905.  The mother agreed there had been a material change of circumstances because visitation in her home was no longer feasible.  *Id., ¶* 6, 432 P.3d at 905-06.  She asked that the decree be modified so the father would exercise visitation elsewhere in the county.  *Id.*

[¶22]   The district court found there was a material change of circumstances because the visitation arrangement was not working.  *Id., ¶* 20, 432 P.3d at 908-09.  It entered an order stating father could exercise his visitation anywhere he wanted except at the mother's home.  *Id., ¶* 10, 432 P.3d at 907.  However, the court did not stop there.  It ordered that the father would have visitation every other weekend "except if there was a three-day weekend in the month, in which case he could opt out of his normal weekend visitation and

6

use the three-day weekend instead." *Id.* It also ordered the father would have visitation every spring break and the entire summer except for two weeks. *Id.*

[¶23] The mother argued on appeal that the district court was limited by the parties' pleadings to ordering a different location for visitation and it could not change the visitation schedule. *Id.,* ¶ 21, 432 P.3d at 909. We rejected that argument, stating: "Once a material change in circumstances has been found, a court may consider all factors that affect the best interests of the children, and is not limited to the factors identified by the parties." In this case, Mother claims that, under *Booth*, the district court was authorized to modify any aspect of the divorce decree, including child support, once it found a material change of circumstances regarding custody.

[¶24] *Booth* clearly did not go that far. It simply found that, once the visitation order was reopened because there was a material change of circumstances, the district court could modify it in the best interests of the children. Child support was not an issue in *Booth,* and this Court made no mention of it in the opinion. If we interpreted *Booth* as Mother argues, the rule for modifying stipulated child support orders as set out in *Smith, Sharpe* and *Wright* would essentially be nullified.

[¶25] Had the district court awarded primary custody to Father, that would be a material change in circumstances other than a change in presumptive child support which would justify changing the stipulated decree. *See, e.g.*, *McCulloh v. Drake,* 2005 WY 18, ¶ 24, 105 P.3d 1091, 1096 (Wyo. 2005); *Zupan v. Zupan,* 2016 WY 78, ¶ 8, 377 P.3d 770, 774 (Wyo. 2016) (a material change in circumstances justifying reopening a child support order occurs when custody is modified). No such change occurred in this case because the district court did not modify custody. While there may be other ways a material change of circumstances regarding child support could be shown, neither the district court nor Mother have identified such in this case. *See* § 20-2-311(a) (a party can bring "an action for modification of a support order, based upon a substantial change of circumstances, at any time").

[¶26] The district court abused its discretion by reopening the stipulated child support order without requiring Mother to show a change in circumstances regarding child support other than a 20% change in the presumptive support amount.

### 2. *Child Custody*

[¶27] Father asserts the district court improperly denied his request to modify the decree to award him primary custody of TKK and KBK. We review the district court's child custody order for an abuse of discretion.

It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle. . . . A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Stevens v. Stevens,* 2014 WY 23, ¶ 8, 318 P.3d 802, 805-06 (Wyo. 2014) (quoting *Bingham v. Bingham,* 2007 WY 145, ¶ 10, 167 P.3d 14, 17–18 (Wyo. 2007)).

*Jacobson v. Kidd,* 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018) (quoting *Meehan-Greer v. Greer,* 2018 WY 39, ¶ 14, 415 P.3d 274, 278-79 (Wyo. 2018) (other citations and quotation marks omitted)).

[¶28] Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2019) sets out the statutory requirements for modification of custody and visitation orders:

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).

[¶29] Because of the *res judicata* effect afforded custody orders, a finding of a material change of circumstances since entry of the decree is a threshold requirement. *Bishop v. Bishop,* 2017 WY 130, ¶ 11, 404 P.3d 1170, 1173 (Wyo. 2017) (quoting *Hanson v. Belveal,* 2012 WY 98, ¶ 18, 280 P.3d 1186, 1193 (Wyo. 2012) (other citations omitted)). "[T]o be considered material and justify reopening the decree, the change in circumstances must affect the welfare of the children." *Jacobson,* ¶ 17, 426 P.3d at 821. *See also, Hanson,* ¶ 34, 280 P.3d at 1197.

[¶30]  The district court concluded Mother's move with the children to Arizona and its attendant circumstances constituted a material change of circumstances since the decree and warranted reopening the custody determination.  It identified several facts as establishing a material change of circumstances.  The court noted that at the time of the decree and before the move, Father had spent significantly more time with the children than the decree mandated.  It also recounted the children's behavioral and social problems at school and daycare in Laramie County, noting, however, that TKK's kindergarten teacher testified he had improved during the 2017/2018 academic year.  The district court recited Mother's reasons for moving to Arizona, which included attending school at Arizona State University (ASU), providing TKK with more services for his special needs, and distancing herself from Father so she could parent without his control.  With regard to Mother's stated reasons for moving, the district court observed:

> But the evidence at trial belied some of Mother's rationalizations for the move.  The evidence at trial was that since the move to Arizona, Mother only attended school online and has only completed one college class.  That TKK no longer even has an autism diagnosis and, in fact, may not even have had one when Mother moved with the children to Arizona and that, in his current school environment, TKK has access to fewer special resources than he did when he was . . . enrolled in school in Laramie County.
>
> In addition, Mother's move has caused the minor children, both of whom continue to struggle socially and behaviorally, to be exposed to constant travel, disruption, and changes in environment just to be able to spend time with both parents.
>
> The court finds that Mother's decision-making in connection with the move is questionable.  All of those facts, when taken together, certainly constitute a material change in circumstances that would cause the [c]ourt to reopen the custody determination.[1]

(footnote added).

[¶31]  Neither party contests the district court's determination that the situation associated with Mother's move from Laramie County to Arizona was a material change in circumstances.  Indeed, we stated in *Arnott v. Arnott,* 2012 WY 167, ¶ 40, 293 P.3d 440,

---

[1] The district court's order identified the parties by name.  Throughout this opinion, we have changed the names to "Mother" and "Father" without bracketing for ease of reading.

458 (Wyo. 2012), relocation of a custodial parent and factors "derivative" of that relocation may constitute a material change of circumstances.

[¶32] A material change of circumstances does not necessarily warrant a change of custody. *Jensen v. Milatzo-Jensen,* 2013 WY 27, ¶ 12, 297 P.3d 768, 773 (Wyo. 2013); *Arnott,* ¶ 41, 293 P.3d at 458. It simply means the court must turn its attention to the best interests of the children. *Id.* This analysis is guided by Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2019):

> In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>
> (i) The quality of the relationship each child has with each parent;
>
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii) The relative competency and fitness of each parent;
>
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
>
> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
>
> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
>
> (viii) Geographic distance between the parents' residences;
>
> (ix) The current physical and mental ability of each parent to care for each child;

10

(x) Any other factors the court deems necessary and relevant.

[¶33] Subsection (x) allows the court to consider other relevant factors. We have recognized that, when the custodial parent relocates, additional non-exclusive factors may be important to the best interests analysis. These factors include "'the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement, the relocating parent's motives for proposing the move, and whether reasonable visitation is possible for the remaining parent.'" *Paden v. Paden,* 2017 WY 118, ¶ 11, 403 P.3d 135, 139 (Wyo. 2017) (quoting *Arnott*, ¶ 33, 293 P.3d at 455). *See also, Ianelli,* ¶ 34, 444 P.3d at 70. "'Depending on the case, different factors will present a greater need for emphasis.'" *Paden,* ¶ 11, 403 P.3d at 139 (quoting *Pahl v. Pahl*, 2004 WY 40, ¶ 10, 87 P.3d 1250, 1254 (Wyo. 2004)).

[¶34] Looking at § 20-2-201(a), the district court found the parents equal with regard to subsections (i), (ii), (iii), (iv), (v), the aspect of (vi) that pertains to how the parents interact and communicate with the children, and (ix). Specifically, the district court concluded both parents had "really outstanding relationships with the children" (i); each had the ability to provide for the children during his or her period of responsibility (ii); each was fit and competent to care for the children (iii); each had demonstrated a willingness and a desire to accept care for the children at specified times (iv); each had demonstrated an understanding that one of the ways he or she can best maintain and strengthen the relationship with the children is by "being with them, by being [a] hands-on parent[]" (v); each effectively communicated with the children and provided significant love and support (part of vi); and both parents were well-equipped to serve as primary custodian of the children (ix).

[¶35] Nevertheless, the court expressed concern about the parties' abilities to co-parent their children, which pertains to the part of § 20-2-201(a)(vi) addressing the parents' ability to "interact and communicate with each other and how such interaction and communication may be improved" and subsection (vii) – "the ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy." The court indicated these factors favored Mother. According to the court, Mother did an outstanding job of communicating with Father in a solicitous and conciliatory tone, while Father was accusatory and negative toward Mother, often blaming her for the children's struggles. He admitted he had referred to her as a "whore," albeit outside the presence of the children, and suggested in his trial testimony that she was a thief who could not be trusted with the address of the place he stayed when he visited the children in Arizona.

[¶36] The district court continued:

What is even more troubling, though, is Father's apparent failure or refusal to take affirmative steps to become an involved participant in the children's lives in Arizona. His attitude also seems to be that because he does not agree with the move, . . . he will not commit his time and energy to participating in the children's lives there.

The few times he has traveled to Arizona to visit the children over the last year, Father has refused to take them to their recreational activities or otherwise attempt to meet their friends, their friends' parents, and their coaches. He does not know the names of most of the individuals who provide day-to-day care for his children, even though that information is readily available to him and the opportunities to develop relationships with those individuals is also readily available to him. Even though his schedule is by all accounts flexible and his financial resources significantly greater than Mother, he never once, by his own admission, traveled to Arizona just to spend some time in the boys' schools, get to know their teachers, take them to soccer practice or meet their therapist.
. . .
While it is very true that Mother's decision to move created this situation, and Father certainly has . . . no obligation to agree with or support that decision, to be taken seriously as a viable co-parent, Father . . . does have an obligation to demonstrate that he will and wants to be intimately involved in his children's lives no matter where they live. He has not done that and instead has adopted a role of insolen[ce] and resentment, allowing that attitude to serve as a barrier to providing meaningful support to his sons on a daily basis. He is willing and able to parent but only on his own terms and on his own turf.

As a result, the [c]ourt cannot and does not conclude that a change in custody is warranted and the [c]ourt will deny [Father's] petition to modify custody.

[¶37] Father generally does not contest the district court's factual findings; however, he asserts the district court abused its discretion by failing to consider factors specific to Mother's relocation. He likens this case to *Ianelli,* ¶¶ 34-36, 444 P.3d at 70, where we remanded for the district court to consider the mother's motives for moving and the father's ability to continue to exercise visitation.

12

[¶38] There is an important difference between this case and *Ianelli* – neither party here requested findings under W.R.C.P. 52(a)(1)(A). *Id.,* ¶ 41, 444 P.3d at 71 (Kautz, J., specially concurring) (recognizing "a Rule 52(a) request" was made in *Ianelli*). Under Rule 52(a)(1), when the court holds a bench trial, "it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant." However, Rule 52(a)(1)(A) states: "If one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, the court shall state in writing its special findings of fact separately from its conclusions of law." Given there was no request for findings under Rule 52(a)(1)(A) in this case, the district court was required only to find generally for Mother. With regard to the relocation factors, specifically, this Court stated in *Cook v. Moore,* 2015 WY 125, ¶¶ 11-12, 357 P.3d 749, 752-53 (Wyo. 2015), that the district court is not required to explicitly rule on the relocation factors as long as there is some indication it considered them.[2]

[¶39] While the district court did not specifically articulate each of the factors pertaining to Mother's relocation or explain, with particularity, how those factors informed its decision, the record reflects the court considered Mother's relocation. Father claims the district court failed to adequately address how the children fared under the existing custody order. We disagree with Father's reading of the record. The court discussed how the children fared under the original custody order, both before and after Mother's relocation. It discussed the children's behavioral, social, and academic issues and noted they struggled in both Wyoming and Arizona. The district court's findings are supported by the record and indicate it considered this factor neutral.

[¶40] Father argues the children's behavioral and social problems developed after Mother became the primary custodian (regardless of where she and the children resided). He does not, however, direct us to evidence showing that the children's behavior deteriorated as the result of Mother being the primary custodian. Mother testified TKK was diagnosed with autism prior to the divorce and his impulsiveness and communication difficulties, which resulted in aggressive behavior, were caused by the autism and/or other developmental issues. Thus, it is reasonable to infer that TKK's behavioral difficulties preceded the divorce and did not originate when Mother became primary custodian. Father does not direct us to any evidence showing KBK's behavior was better prior to Mother being named primary custodian or specifically linking his behavioral problems to Mother's parenting.

---

[2] As always, we "encourage district courts to place on the record the facts crucial to their child custody decisions" regardless of the lack of a mandatory requirement or a Rule 52(a)(1)(A) request. *Ianelli,* ¶ 41, 444 P.3d at 71 (Kautz, J., specially concurring) (citing *TW v. BM*, 2006 WY 68, ¶ 14, 134 P.3d 1262, 1266 (Wyo. 2006); *Fergusson v. Fergusson*, 2002 WY 66, ¶ 15, 45 P.3d 641, 645-46 (Wyo. 2002)). *See also, Booth,* ¶ 22, 432 P.3d at 909 ("To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.") (citations omitted).

[¶41] The next relocation factor which Father claims did not receive adequate attention by the district court is Mother's motives for moving to Arizona. Mother stated she moved so she could attend school at ASU, access more resources for TKK's special needs, and to distance herself from Father. As we set out in Paragraph 30, above, the district court discussed Mother's motives for moving to Arizona in concluding there was a material change of circumstances.

[¶42] Father claims the district court abused its discretion by failing to separately consider Mother's motives in determining the children's best interests. The same evidence often pertains to both the material change of circumstances and to the children's best interests. *Arnott,* ¶ 41, 293 P.3d at 458 ("We note that the district court was able to consider a great deal of evidence bearing on the best interests of the children in addressing the issue of whether there had been a material change in circumstances."). Contrary to Father's assertion, the district court briefly referred to its earlier discussion of Mother's motives during its best interests analysis. It stated: "While Mother can and has been faulted for some of her motives in moving with the children to Arizona, she has demonstrated an outstanding track record for communicating with Father regarding all facets of the children's lives." Moreover, the "'failure to explicitly comment on a . . . factor in the district court's opinion letter or order does not necessarily indicate that the court failed to consider that factor.'" *Paden,* ¶ 12, 403 P.3d at 140 (quoting *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 10, 167 P.3d 639, 642 (Wyo. 2007)). The district court clearly had Mother's motives for moving to Arizona in mind when it made its decision.

[¶43] Additionally, the record shows Mother's motives for moving would not necessarily weigh heavily in Father's favor. We consider "whether the relocating parent's motives for proposing the move are legitimate, sincere, [and] in good faith[.]" *Love v. Love,* 851 P.2d 1283, 1288 (Wyo. 1993). The district court found some of her stated reasons for the move had not panned out, and the record supports that. At the time of the trial, Mother had only completed one class at ASU, and that was online, so she could have accomplished the same thing in Laramie County. However, the evidence, when reviewed in the light most favorable to Mother, showed there were extenuating circumstances that interfered with her educational plans, including illness and the cost and time involved with litigating this matter.

[¶44] As the district court noted, Mother's goal of accessing additional resources for TKK's special needs in Arizona had not been accomplished at the time of trial. In fact, TKK received fewer minutes of special education at his school in Arizona than he had in Laramie County. However, Father does not direct us to any objective evidence showing a direct negative impact on the quality of TKK's education or his academic performance. During the trial, Mother testified TKK had recently been reevaluated to determine his precise disabilities so he could have access to additional resources in Arizona in the future.

14

[¶45]   Mother also testified that she moved to get away from Father's "constant control." On its face, this admission would seem to be an improper motive for moving. However, in Paragraphs 35 and 36, we recited the district court's fact finding about Father's controlling and belittling behavior toward Mother, which provides some legitimacy to her stated reason for moving. While moving the children away from the noncustodial parent will typically impact the children's relationship with the noncustodial parent and be contrary to the children's best interests, it is not improper for the court to consider the noncustodial parent's inappropriate behavior in its analysis. *See, e.g., Olsen v. Olsen,* 2013 WY 115, ¶¶ 17-18, 310 P.3d 888, 893 (Wyo. 2013) (remarking on the father's controlling behavior in upholding the district court's refusal to grant his request for a change of custody after the mother relocated to another state). As the district court noted, the totality of the evidence on this factor shows some of Mother's decision-making regarding the move may have been questionable; however, it did not necessarily show Mother's motives for moving were not legitimate, sincere, or in good faith. *Love,* 851 P.2d at 1288. The district court's findings indicate it weighed this factor slightly in favor of Father.

[¶46]   The last factor Father claims the district court did not adequately address is whether reasonable visitation is possible for him. The court commented several times about the distance between Laramie County and Arizona. *See* § 20-2-201(a)(viii) (geographic distance between the parents' residences). The district court also recognized there were problems with visitation, remarking that Mother's relocation had caused the "children, both of whom continue to struggle socially and behaviorally, to be exposed to constant travel, disruption, and changes in environment just to be able to spend time with both parents." The evidence clearly supports that finding. The decree provided for alternate weekend visitation (or overnight on Wednesdays), two uninterrupted weeks in the summer, and holidays. Father either had to travel to Arizona to exercise visitation or the children had to travel to Wyoming. On weekends, a great deal of travel was required for a relatively short visit. This factor, therefore, weighed in favor of Father.

[¶47]   The district court was charged with balancing the § 20-2-201(a) factors, together with the relocation factors, to determine whether it was in the children's best interests to modify custody. Some of the factors weighed equally for both parents, some were neutral, some favored Mother, and some favored Father. In balancing the factors and determining whether a change of custody was in the children's best interests, the district court had to keep in mind that changes in primary custody generally are not favored and may deprive the children of stability. *See Hanson,* ¶ 48, 280 P.3d at 1200 (citing *Morris v. Morris,* 2007 WY 174, ¶ 27, 170 P.3d 86, 93 (Wyo. 2007)); *Womack v. Swan,* 2018 WY 27, ¶ 14, 413 P.3d 127, 134 (Wyo. 2018) (citing *Williams v. Williams*, 2016 WY 21, ¶ 30, 368 P.3d 539, 549 (Wyo. 2016) (other citation omitted).

[¶48]   Father would have us reweigh the evidence in this case to place greater emphasis on the factors that favored him as primary custodian. The task of weighing the evidence is left to the district court; we do not reweigh the evidence on appeal. *Bruegman v.*

15

*Bruegman,* 2018 WY 49, ¶ 57, 417 P.3d 157, 174 (Wyo. 2018). *See also, Jackson v. Jackson,* 2004 WY 99, ¶ 15, 96 P.3d 21, 26 (Wyo. 2006).[3] "'Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did.'" *Walker,* ¶ 21, 311 P.3d at 175 (quoting *Hanson,* ¶ 13, 280 P.3d at 1192)). The record before us, when viewed in accordance with our standard of review, contains ample evidence to support the district court's decision. The district court did not abuse its discretion by refusing to change primary custody of the children.

### 3. Visitation

[¶49] As we stated above, the district court concluded the children were being harmed by the alternate weekend visitation schedule. Yet, it refused to consider modification of visitation, claiming it did not receive any evidence or argument from the parties on the issue. The court stated that, despite the obvious problems with the current visitation schedule, it could not fashion a revised visitation schedule.

[¶50] We agree the parties' trial presentations primarily addressed custody and child support. However, the record contains significant evidence showing how the visitation schedule was not working for the best interests of the children and addressing potential alternative schedules.

[¶51] Mother testified she had continued to honor the visitation schedule after the move but admitted the "back and forth" had been confusing and had affected the children. Father testified the weekend visitation schedule was difficult given the distance between the parties' residences and the short duration of the visits. Father explained the routine for his weekend visitation with the children as follows:

> Q.    Mr. Kimzey, my first question has to do with visitation. Can you tell the Court what the current decree dictates for your weekend visitation? What [are] the time exchanges?
>
> A.    Friday at 2:00 p.m. is when I'm allowed to pick them up and drop them off Sunday at 2:00 p.m.
>
> Q.    And since this move of the children to Arizona, explain to the Court how that decree has been met or not met.

---

[3] The GAL presents a litany of criticisms of the district court's findings on the various best interests factors in § 20-2-201(a). Like Father, the GAL encourages us to reweigh the evidence, which we do not do. *Id.* Moreover, the GAL's analysis disregards the standard of review which requires us to give every favorable inference to Mother's evidence, while omitting any consideration of the evidence presented by Father. *Jacobson,* ¶ 14, 426 P.3d at 820; *Meehan-Greer,* ¶ 14, 415 P.3d at 278-79.

> A.    It's been, you know, almost impossible to get the children by 2:00 because they're in school until about at 3:30. If they come here for the weekend, I don't get them until sometimes 10 o'clock at night from [Denver International Airport], so we get home right at 1:00 a.m. which is why I elect to go to Arizona.
>
> The [d]ecree was kind of set up based on the . . . four-day week of school,[4] so Friday wouldn't be an issue. And Sundays I do everything to get them back in Arizona – or back to Mother by 2:00 p.m.
>
> Q.    So has this cut into your visitation time?
>
> A.    Yes.
>
> Q.    So when you travel to Arizona, about how much time do you get with your children?
>
> A.    All day Saturday until 2:00 on Sunday and by the time we pick them up Friday after school, we usually get something to eat and drive back to [the place they stayed in Arizona] and it's, you know, time to start calming down, trying to figure out what they did for school and kind of catch up and it's bedtime.
>
> Q.    When the children travel to Wyoming, how much time do you get with them?
>
> A.    Most of the time if it's Saturday, that's about it. By the time I drive to Denver [on Sunday] and get on the airplane, you know, it's kind of hard to spend quality time with them in the car and on the plane, but we do what we can. So not a lot of time.

(footnote added). He said that, when the children came to Wyoming, he also split his time with his and Mother's extended families so they can see the children. Father stated it would be difficult for him to exercise Wednesday night visitation because of his work. Transportation costs associated with the alternate weekend visitation was also an issue.

---

[4] The Carpenter elementary school that TKK attended apparently had a four-day school week.

[¶52]   Mother generally did not dispute Father's testimony regarding visitation.  However, she stated she has offered Father opportunities to extend his time with the children when he travels to Arizona.  She told him he could return the children later than 2:00 p.m. on Sundays and he could pick up KBK at 2:00 on Fridays, rather than 3:30 when TKK gets out of school.  He did not, however, take advantage of those opportunities.

[¶53]   "Once a material change in circumstances has been found, a court may consider all factors that affect the best interests of the children, and is not limited to the factors identified by the parties." *Booth,* ¶ 21, 432 P.3d at 909.  "[T]he court is required to make an independent determination about what, if any, modification [of visitation or custody] is in the children's best interest." *Id.*  "Ultimately, the 'goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children.'" *Pace v. Pace,* 2001 WY 43, ¶ 11, 22 P.3d 861, 865 (Wyo. 2001) (quoting *Leitner v. Lonabaugh,* 402 P.2d 713, 720 (Wyo. 1965), *overruled on other grounds by Bruegman,* ¶¶ 13-16, 417 P.3d at 162-63)). *See also, Zupan v. Zupan,* 2010 WY 59, ¶ 13, 230 P.3d 329, 333 (Wyo. 2010).

[¶54]   After concluding the current schedule was not operating in the children's best interests, the district court, nevertheless, ruled there was no evidence from which it could devise a new visitation schedule.  We disagree.  Father stated in his pretrial memorandum that "[g]iven the distance between the parties' residences, standard visitation would not be appropriate."   In her pretrial statement, Mother proposed the visitation schedule be modified to allow Father two weekends per month, revolving around "the long weekends from school to maximize his visitation, i.e., weekends the children have a Friday or a Monday off school to enjoy the longer weekends with the children."  With regard to holiday visitation, Mother proposed that the standard order apply except Father would have two consecutive years of spring break followed by one year for Mother and Christmas break would be divided in half based on the number of days the children were off school.  She recommended that Father get all of summer break except the first week after school lets out, the two weeks before school starts, and three full nights during the break.

[¶55]   Mother also testified about a potential new visitation schedule at trial.  She stated that, under the decree, Father was entitled to approximately 120 days of visitation throughout the year, excluding holidays (every other weekend is 104 days and two weeks in the summer is 14 days, for a total of 118 days).  Mother testified that, when she told Father she was moving, she proposed his summer visitation be extended to give him a total of 160 days of visitation.  Near the end of the trial Mother testified:

> Q.     What would you like to happen with weekend visitation?

18

> A. That Father come to Arizona to be involved with the boys. He gets 60 days during the summer and extended weekends, and we split holidays.

[¶56] Father agreed that visitation with the boys in Wyoming was better when there were extended weekends, rather than just Friday afternoon through Sunday afternoon. Mother also mentioned the possibility of working visitation around Father's basketball coaching schedule, and the basketball schedules were admitted as exhibits at trial.

[¶57] Once the district court determined there was a material change of circumstances regarding custody and visitation and the children were being harmed by the current visitation schedule, it had the responsibility to fashion an order in the children's best interests. *Booth,* ¶ 21, 432 P.3d at 909 (citing *Forbes v. Forbes*, 672 P.2d 428, 429 (Wyo. 1983)). Contrary to the district court's ruling, there was enough information in the record for it to exercise its discretion to modify Father's visitation to fit the reality that the parties live hundreds of miles apart. We reverse that aspect of the district court's order and remand for the district court to devise a new visitation order in the children's best interests.

### 4. GAL's Arguments

[¶58] The GAL makes several arguments in support of her assertion the district court did not adequately consider the children's rights. She argues the district court violated the children's right to due process of law when it enforced the trial time limit and prevented her from finishing her recommendation to the court. The GAL also asserts the district court erred by failing to set out, in its decision, its reasons for disregarding her recommendation.[5]

### a. Time Limits

[¶59] The district judge informed the parties and the GAL that the time for the two-day trial would be divided; Mother and Father would each be allocated five hours of time and the GAL would receive two hours. The GAL did not object to the length of the trial or to the distribution of time.[6] During the trial, the GAL cross-examined the parties' witnesses and presented a closing argument. The district court informed the attorneys throughout the trial of the amount of time they had used and the amount that remained from their allocated

---

[5] The GAL maintains the children became indispensable parties to the modification action once she was appointed. We do not understand the significance of this argument, other than as a basis for asserting the district court deprived the children of due process of law. Given a GAL "acts as an advocate for the child," *Clark v. Alexander,* 953 P.2d 145, 153 (Wyo. 1998), we will, for the sake of this discussion, recognize the children had the right to due process, which was exercised by the GAL.

[6] At the beginning of the trial, the district court stated that, although the GAL was originally supposed to get two hours to present her case, it was going to limit her to one and a half hours. The GAL objected and the district court reconsidered, stating it would "find" two hours for the GAL. The GAL did not claim the two-hour time limit was improper.

totals. The GAL ran out of time during her closing argument; however, she did not object to the time limit or request additional time to finish explaining her recommendation to the court.

[¶60] A district court has considerable discretion in conducting trials and "'a legitimate interest in planning its schedule.'" *Lemus v. Martinez,* 2019 WY 52, ¶ 39, 441 P.3d 831, 840 (Wyo. 2019) (quoting *JKS v. AHF (In re ARF),* 2013 WY 97, ¶ 34, 307 P.3d 852, 859 (Wyo. 2013)). Thus, "a court may limit the length of the trial and the amount of time the litigants have to present their cases, so long as it complies with the dictates of due process." *Id.*

[¶61] Generally, we review a district court's scheduling decisions for abuse of discretion. *Lemus,* ¶ 40, 441 P.3d at 840 (citing *ARF,* ¶ 26, 307 P.3d at 858). Here, the GAL did not object to the time limitation, request additional time, or make an offer of proof describing the recommendation she was unable to make because of the district court's time limit. Under our precedent, a party who fails to preserve an error waives any argument that the district court abused its discretion. *Lemus,* ¶ 40, 441 P.3d at 840 (citing *JN v. RFSG (In re Paternity of HLG),* 2016 WY 35, ¶ 29, 368 P.3d 902, 909 (Wyo. 2016)).

[¶62] The GAL claims the waiver rule does not apply because the district court's failure to provide adequate time impacted the children's fundamental right to due process. Due process provides a party notice and an opportunity to be heard, and we have recognized it as a fundamental right under some circumstances. *Lemus,* ¶ 34, 441 P.3d at 839. *See also, GS v. State (In the Interest of VS),* 2018 WY 119, ¶ 25, 429 P.3d 14, 21-22 (Wyo. 2018) (considering a claim that the procedure used at a juvenile permanency hearing violated the parent's right to due process even though it was not raised below).

[¶63] The GAL does not describe to this Court the additional information she would have put forward had the district court not enforced the time limit. In other words, she does not explain how the children's opportunity to be heard was impacted. It was abundantly clear from the GAL's closing argument that she believed primary custody of the children should be awarded to Father. She reviewed the trial evidence using most of the factors set out in § 20-2-201(a). In fact, she refers extensively to her closing argument in her appellate brief. The GAL's failures "both on appeal and at trial to describe the evidence [s]he would have presented or its impact on the district court's custody decision provide no 'justification that would warrant our departure from [the waiver] rule.'" *Lemus,* ¶ 44, 441 P.3d at 841 (citing *Brown v. Brown,* 2016 WY 120, ¶ 16 n.3, 385 P.3d 321, 325 n.3 (Wyo. 2016)).[7]

---

[7] As we noted in *Lemus,* ¶ 42 n.9, 441 P.2d at 840 n.9, some of our case law applies the plain error standard to review unpreserved claims that a district court violated a party's fundamental rights. If we were to consider this case under the plain error standard, the result would be the same. To establish plain error, the GAL must show "'1) the record is clear about the incident alleged as error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) [the children were] denied a substantial right resulting in material prejudice.'" *Wyant v. State,* 2020 WY 15, ¶ 5, 458 P.3d 13, 16 (Wyo. 2020) (quoting *Sindelar v. State,*

### b. *Findings Regarding the GAL's Recommendation*

[¶64]   The GAL claims the district court erred by not providing an explanation as to why it did not follow her recommendation.  Her argument—that the district court is required, as a matter of law, to explain how it viewed the GAL's recommendation—raises a question of law, which we review de novo.  *Hammons v. Table Mountain Ranches Owners Ass'n, Inc.,* 2003 WY 85, ¶ 12, 72 P.3d 1153, 1155 (Wyo. 2003) (citing *Stansbury v. Heiduck,* 961 P.2d 977, 978 (Wyo. 1998)).

[¶65]   We explained the role of the GAL in child custody cases in *Clark,* 953 P.2d at 154:

> [T]he attorney/guardian ad litem is to be an advocate for the best interests of the child and actively participate at the proceedings. As counsel, the attorney/guardian ad litem has the opportunity and the obligation to conduct all necessary pretrial preparation and present all relevant information through the evidence offered at trial. Recommendations can be made to the court through closing argument based on the evidence received.

The district court is under no compulsion to accept the GAL's recommendation.  *JR v. TLW,* 2016 WY 45, ¶ 18, 371 P.3d 570, 577 (Wyo. 2016).

[¶66]   As we noted earlier, it is always preferable that the district court explain the reasons for its decision.  However, "[w]e have placed the onus on the parties to request findings of fact and conclusions of law pursuant to W.R.C.P. 52(a)[(1)(A)]." *Fergusson,* ¶ 15, 45 P.3d at 646.  The GAL did not make a request under Rule 52(a)(1)(A); therefore, no complaint can be made "about the absence of formal findings" regarding the GAL's recommendation. *Fergusson,* ¶ 15, 45 P.3d at 646 (citing *Resor v. Resor,* 987 P.2d 146, 148 (Wyo. 1999)).

[¶67]   Nevertheless, the GAL asks us to adopt Mississippi law on this matter.  Mississippi courts are required to "at least include a summary review of the recommendations of the guardian [ad litem] in the court's findings of fact" whenever appointment of a guardian ad litem is required by law.  *Floyd v. Floyd,* 949 So.2d 26, 29 (Miss. 2007) (citing *SNC v. JRD,* 755 So.2d 1077, 1082 (Miss. 2000)).  The courts must also include their reasons for rejecting the guardian ad litem's recommendations.  *Id.*

---

2018 WY 29, ¶ 16, 416 P.3d 764, 768 (Wyo. 2018) (other citation omitted)).  The GAL cannot satisfy the second and third parts of the plain error test because, by not describing the argument she would have made if she had more time, she has failed to show a violation of due process or how the children were prejudiced by any error.

[¶68] Unlike in Wyoming, courts in Mississippi are required by statute to appoint a guardian ad litem in custody cases where allegations of abuse and neglect are made. *Id.* at 28 (citing Miss. Code Ann. § 93-5-23 (Supp. 2006)). However, in other cases "where the appointment of the guardian ad litem [is] not mandatory, the [court] may disregard the recommendation of the guardian ad litem at his discretion" and he is not required to state his reasons for refusing the recommendation. *Balius v. Gaines,* 958 So.2d 213, 219 (Miss. Ct. App. 2005); *Passmore v. Passmore,* 820 So.2d 747, 751 (Miss. Ct. App. 2002).

[¶69] We note, first, that we are under no obligation to follow Mississippi law. The GAL makes no showing that Wyoming law pertaining to guardians ad litem is based upon Mississippi law or that Mississippi law is especially persuasive on this point. Furthermore, Mississippi law would not mandate that the district court state its reasons for refusing to follow the GAL's recommendations in this case because there is no statute that required appointment of a guardian ad litem. The GAL points out that the First Judicial District, Laramie County, standard case management order requires appointment of a guardian ad litem when custody is contested. That is true, but the court can waive the requirement for good cause. Good cause may include an inability to pay a guardian ad litem or a showing that the "dispute involves minor matters not seriously implicating the welfare of the child," or "other good cause presented to the [c]ourt which outweighs the benefits to the child of being represented." More importantly, the court's standard order is not based upon a statute. The GAL has provided no authority requiring the district court to explain why it refused to adopt the GAL's recommendation when no request for specific findings and conclusions was made.

## CONCLUSION

[¶70] The district court abused its discretion by reopening the stipulated child support order without a showing of a material change of circumstances other than a 20% change in the amount of presumptive support under the guidelines. The district court did not abuse its discretion by denying Father's request for primary custody of the children, but it did abuse its discretion by refusing to modify visitation. The children's best interests were not being served by the original visitation order, and there was sufficient information in the record for the district court to craft a new visitation schedule. The GAL waived its claim that the district court violated the children's right to due process by enforcing the trial time limit and stopping the GAL's closing argument before she finished her recommendation. The district court did not err by failing to explain its reasons for not following the GAL's recommendation regarding custody.

[¶71] Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.